# KANSAS CITY SUBURBAN BELT RAILWAY COM-PANY, Plaintiff in Error, v. McELROY.

### Division One, March 29, 1901.

1. **Instructions:** REPETITION. Where the instructions given fully cover the law applicable to the facts in the case and are not possible of misconstruction, it is not error to refuse others which are mere repetitions of the same legal propositions but clothed in a slightly different verbiage.

2. **Error in Admitting Evidence:** CURED BY INSTRUCTIONS: COMMISSIONERS' REPORT. Not every error committed by admitting improper evidence is cured by an instruction directing the jury to disregard it. But in this condemnation case, it is held that the error, if indeed it was error, in permitting the defendant to read the commissioners' report to the jury, was cured by an instruction which told the jury that, "in estimating the damages, if any, done to defendant's land by reason of the location of the plaintiff's railroad over and through it, you will not consider or be in any wise influenced by the fact that the commissioners allowed the defendant the damages stated in their report read to you." And for the same reason the error of permitting improper comments on that award to be made by the landowner's attorney, is also cured by the same instruction.

3. ————: COMMISSIONERS' REPORT IN CONDEMNATIONS. The reading of the report of the commissioners to the jury, in a condemnation proceeding, is not of itself improper, though the jury have no right to be influenced by it, or to consider the amount of the commissioners' award. As the defendant is entitled to interest on the excess over that award, it is proper that the jury should know what the amount was. If the evidence shows defendant's damage to be in excess of the amount awarded him by the commissioners, the amount of that award might be a fact which the jury should know in estimating his damage. Certainly, if the evidence shows such facts, and the railroad paid the commissioners' award, and, on appeal, the jury awarded the landowner no more, no injury is done the railroad

in permitting the report to be read to the jury, if the court tells the jury for what purposes only such award may be considered by them.

4. **New Trial**: REMARKS OF ATTORNEY: RULING OF TRIAL COURT. In the determination of a motion for a new trial, involving the consideration of conflicting or discordant facts, such as whether or not attorneys made certain wrongful comments on the evidence, the appellate court will be bound by the action of the trial court.

Error to Jackson Circuit Court.——*Hon. J. H. Slover,* Judge.

AFFIRMED.

*Lathrop, Morrow, Fox & Moore* for plaintiff in error.

(1) The court erred in refusing to instruct that benefits to the property in controversy, by reason of switch facilities, were special benefits. Railroad v. Fowler, 142 Mo. 683. (2) The court erred in admitting in evidence the report of the condemnation commissioners and in permitting counsel to comment upon it in his closing argument to the jury. Lewis on Eminent Domain, sec. 449.

*Holmes & Perry* for defendant in error.

(1) No error was committed in refusing instructions 8 and 9 asked by the plaintiff for the satisfactory reason that the rule attempted to be stated by those instructions was correctly declared in several other instructions given by the court. Railroad v. Palmer, 142 Mo. 679; Gonsolis v. Gearhart, 31 Mo. 590. (2) The commissioners' report was properly brought to the attention of the jury and they were instructed with reference to it by the court in such explicit terms that it could not be taken by the jury as having any force or bearing as evidence. Railroad v. Fowler, 113 Mo. 475; s. c., 142 Mo. 686. (3) Error in admitting incompetent testimony is effectually

cured by instructions withdrawing the incompetent testimony from the consideration of the jury.   Sidekum v. Railroad, 93 Mo. 405; O'Mellia v. Railroad, 115 Mo. 221; Ball v. Railroad, 37 N. W. 111.

ROBINSON, J.—This proceeding was instituted by plaintiff to condemn a strip of land thirty-six feet wide for its railroad, through four lots in Kansas City, owned by defendant.

The condemnation commissioners appointed by the court filed their report assessing the sum of $8,000 as damages to the defendant McElroy, the owner of the lots, to which report both the plaintiff and defendant duly filed exceptions.   A trial by a jury was had in the circuit court in April, 1896, which again resulted in a verdict, assessing defendant's damages at $8,000.   To reverse the judgment entered upon that verdict, plaintiff has sued out a writ of error from this court.

Although · numerous · formal assignments of errors have been made, the brief filed by counsel for plaintiff in error shows that all have been abandoned except the two following: first, "the court erred in refusing to instruct that benefits to the property in controversy by reason of switch facilities were special benefits;" and, second, "the court erred in admitting in evidence the report of the condemnation commissioners and in permitting counsel to comment upon it in his closing argument to the jury."

Plaintiff's first assignment of error is based upon the action of the trial court in refusing to give instructions numbered 8 and 9 asked by it at the close of the testimony, a copy of which is here inserted, to-wit:

"9.   If the jury believes from the evidence that all or any portion of McElroy's land between Main and Delaware streets has been enhanced in its market value, by reason of abut-

ting upon the railroad as built, so as to make it possible *to run switch tracks* from the railroad to different portions of his land without crossing the lands of other people, then such enhancement in the market value is a *peculiar benefit* which should be deducted from any damages which he might other-wise have sustained.

"8.    The court instructs the jury that the phrase 'peculiar benefits,' as used in these instructions, means any enhancement of or increase in the market value of McElroy's lands or any part of them by reason of the location, construction and operation of the railroad over them as it is located, which is not shared by other lands in that vicinity which are not touched by the railroad."

While the instructions within and of themselves announce no improper rule of law that would make them for that reason objectionable, several other instructions were given to the jury declaring the law announced therein in substantial terms and these instructions if given would have been but the merest repetition of the same legal proposition, tending by their reiteration to confuse rather than to assist the jury in determining the real issues involved.

The court at the plaintiff's instance gave instructions 3, 4, 5, 7 and 11, below, which explain themselves and make further comment upon them unnecessary:

"3.    The court instructs the jury that the fact that other lands abutting on this railroad may be afforded the same or similar opportunities of switch connection as is afforded to the lands of McElroy, does not in law prevent the jury from considering, in connection with all the other facts and circumstances in evidence, such opportunities for switch connections as of peculiar benefit to McElroy's lands, if in fact they increased the market value of his lands, or any part of them.

"4.    If the jury find from the evidence that the McElroy

lands did not abut on Second street, and that a switch track could not be built to his lands from Second street, without crossing lands belonging to some other person or persons, then the jury must consider that his said lands did not have any switch privileges from the railroad on Second street.

"5. In determining whether or not the lands of McElroy, not taken by the right of way, can make switch connections with the railroad, the jury should not confine themselves to the present grade or elevation of the property, but should consider at any other grade or elevation to which it is reasonably susceptible of being reduced.

"7. The court instructs the jury that if after making due allowance for the value of the land taken, and after deducting therefrom the said peculiar benefits, if any, they believe that the market value of the land not taken was as great with the railroad there as the whole tract was without the railroad, then the defendant McElroy is not entitled to any damages, and the jury should not allow any.

"11. If the jury find that the peculiar benefits, if any, to this property equal or exceed the value of the land taken, and the damage, if any, to that not taken, then their verdict should be in the following form: 'We, the jury find that the defendant McElroy is not damaged by reason of the location, construction and operation of the railroad over his lands, and we assess no damages in his favor on account thereof.' Foreman."

In view of the evidence in the case, and the general conduct of the trial, the instructions as given were not possible of misconstruction, and no good result would have been subserved from the further instructing of the jury as to the meaning of the phrase "benefits" or that "switch facilities" afforded to defendant's land by the construction of plaintiff's railroad, whereby it was increased in value, should be considered as special benefits. "Switch facilities" constituted the only claim

of peculiar benefit suggested in the evidence or by the record. In no other particular was it suggested that defendant's land not taken, was benefited by the plaintiff's railroad running through it. In fact, whenever the word "benefit" was used, it could not have been understood by the jury as referring to anything other than to "switch facilities."

The instructions as given, when taken together and considered in the light of the facts of the case, declare the law for plaintiff as favorable as it had the right to ask. They correctly define peculiar benefits and authorize the jury to consider any switch facilities afforded by the railroad over defendant's property as "peculiar benefits," and as said before, no especial good to plaintiff could reasonably have been anticipated from a repetition of the same legal propositions, clothed in the new form of the refused instructions numbered eight and nine asked by plaintiff.

This court has repeatedly held that, when the instruction given fully covers the law applicable to the facts of a case, the refusal of other instructions asked will not be error, although the refused instructions may have stated correct applicatory law. Certainly no harm was occasioned to plaintiff in this case by reason of the court's action in refusing to give the jury its instructions numbered eight and nine as requested.

To appellant's second assignment of error, that the court improperly admitted in evidence the report of the commissioners, and in permitting defendant's counsel to comment upon it in his closing argument to the jury, it would be a sufficient answer to say, if a wrong had been done by both acts, its evil consequence must have been effectively removed by the court's clear and unmistakable instruction to the jury, whereby they were charged that, "in estimating the damages, if any, done to defendant's land by reason of the location of the plaintiff's railroad over and through it, you will not consider or be in

any way influenced by the fact that the commissioners allowed the defendant the damages stated in their report read to you."

While realizing that the effort to correct, by instruction, the influence produced by prejudicial facts improperly communicated to the jury, is oftentimes barren of proper results, there is nothing in the character of the facts disclosed by the report of the commissioners, or the comment thereon by counsel for defendant, calculated to produce that ineradicable influence upon the minds of the jury, favorable to defendant or his cause, or unfavorable to plaintiff or its cause, which the merest suggestion from the court would not remove. Every improper fact that reaches a jury during the progress of a trial, can not be said to awaken an inextinguishable prejudice in its mind, favorable to the party that injects it, for if so, then the only remedy for the trial court, when an improper fact had once gotten to the jury, would be to grant a new hearing, a proposition so productive of evil results and so easy of abuse that it could not be sanctioned for a moment. It is the peculiar character of the fact, or the fact at a peculiar time, that causes appellate courts to feel and say, as they sometimes do, that the prejudicial fact, although instructed against, was not removed, and for that reason order a reversal of the judgment which may have been influenced by the improper and hurtful fact; but the simple fact that the commissioners' estimate of damages, read from cold type, was given to the jury (called upon to reassess the damages to the same property), is not a fact of a character calculated to awaken that unalterable prejudice or that ungovernable passion, in the minds of the jurors, that an instruction, as given by the court in this case would not remove it.

On behalf of respondent it is contended, however, and we think properly, that for particular purposes, the reading of the report of the commissioners to the jury is not subject

Suburban Belt R'y Co. v. McElroy.

to the criticism levelled against it by appellant and was not of itself improper, although it is conceded that the jury had no right to be influenced by, or to consider the amount of the commissioners' award, as a basis for arriving at their estimate of the damages actually sustained by defendant.

If it be borne in mind that the plaintiff had paid into court, in accordance with the award of the commissioners, $8,000 for the use of defendant, and had taken possession of defendant's land, and that defendant, although appealing from the amount of that award, had received same from the clerk, pending his appeal, as it was his right to do, and that at the retrial in the circuit court the evidence introduced by him tended to show that his damages was largely in excess of the award of the commissioners, the amount of that award might become a fact that the jury should know to estimate properly the amount of verdict they should return for the defendant. As defendant would be entitled to interest on any excess of damages the jury might determine he was entitled to receive above the sum which he had secured on account of the commissioners' award, it was proper that the amount of that award be given to them for the purpose of making that computation. And again, as the plaintiff would be entitled to a credit for the amount of such award, so received by defendant, against any damages the jury might believe he had sustained on account of the taking of his land by plaintiff in excess of the amount of the award, it was a fact, alike essential to plaintiff as to the defendant, that the jury be informed as to the amount of the commissioners' award, that a verdict be entered for the proper amount, and not for the full amount of the estimate made by them of defendant's damages.

The court in this case not only instructed the jury to what extent it was improper for them to consider or be influenced by the amount of the award of the commissioners' report, but

by the following instruction it gave to them explicit directions as to how the amount of that award should be used by them in the making up of their verdict:

"The court instructs the jury that before the plaintiff took possession of the land condemned in this case, it was required to pay to the defendant, McElroy, the amount of damages allowed him by the commissioners, which in this case was $8,000, and it is admitted that said McElroy has received the same, and that the plaintiff has taken possession of said land, and if under the instructions of the court, you should find that the defendant, McElroy, has sustained damages by reason of said taking in an amount in excess of said sum of $8,000, you may allow interest on such excess at the rate of six per cent per annum from the time at which said land was taken, in September, 1892, and your verdict should be for the total amount of damages thus found by the jury, after deducting the said sum of $8,000 so paid to the defendant, and your verdict should be in the following form:

"We, the jury, find that the defendant, McElroy, has sustained damages by reason of the taking of his land in controversy in this case by the plaintiff, in the total sum of . . . . . . . . dollars, and from this sum we have deducted the sum of $8,000 heretofore received by said defendant, McElroy, leaving a balance still due him, on account of said damages, of the sum of . . . . . . . . dollars.

"———— Foreman."

The instructions in this case, when taken together and read as a whole, are most complete and it is difficult to conceive how a jury could have been misled by them.

Appellant's further contention, that one of defendant's counsel was permitted to comment upon the report of the commissioners' award, before the jury, unrebuked by the court, is not very satisfactorily presented. The comments of counsel

is not made part of the record otherwise than by reference to
it in the affidavits filed to support appellant's motion for a new
trial, and against the correctness of the record as thus presented,
defendant's counsel, charged with having improperly com-
mented upon the amount of the commissioners award to the
jury, files the following counter or explanatory affidavit:

"Affiant says that he made an argument in the case to the
jury, and in the course of his argument he alluded to the fact
that there was great diversity in the testimony of the experts
as to the value of the real estate, and affiant referred especially
to the following instruction, which had been given by the court:
'The court instructs the jury that they are not bound by the
opinion of the witnesses as to the value, damages or benefits,
but should consider such opinions in connection with the loca-
tion of the property, its facilities as to ingress and egress, its
position relative to the abutting streets, together with all the
facts and circumstances adduced in evidence, and from these
form their own opinions as to the values, damages and bene-
fits.'

"And affiant then referred to the fact that the witnesses
for the defendant had placed a value on the property at from
$150 to $200 per foot, while the witnesses that had been in-
troduced on the part of the plaintiff had placed it very much
lower, and in many instances as low as $50 a foot; and affiant
then referred to the fact that the opinion of experts could not
be much relied on, and he then mentioned the fact that it ap-
peared that the commissioners had put a value on this ground of
$8,000, and he referred to the fact that such men as Henry
C. Harper and others constituted that commission; and when
objection was made to this, affiant followed it up immediately
when he was interrupted, and said that his purpose in referring
to all these matters was simply to illustrate the diversity of

opinion in regard to values, and for that reason it had been thought wise to let the jury themselves inspect the property. Affiant distinctly referred to the fact that the court had instructed the jury that they were not to be controlled by the amount awarded by the commissioners; and affiant distinctly stated when reference was made to that in connection with the other values that it was simply an illustration of the uncertainty of what was called expert testimony......Affiant says that he did not use the language that the jury were 'bound to consider' the report of the commissioners in awarding Mr. McElroy $8,000, but that he did distinctly state that the court had instructed them that they were not to consider or be in any way influenced by such report."

The trial court, with these affidavits in support of and against the motion for a new trial upon that question before it and with its knowledge and observation of what actually took place during the closing argument by defendant's counsel, determined that plaintiff's rights had not been prejudiced by anything that occurred at that time or during the progress of the case, and overruled plaintiff's motion for a new trial, and to its action in the premises we feel bound at this time.   In the determination of a motion for a new trial, involving the consideration of conflicting or discordant facts, we must be bound by the action of the trial court, as upon its finding and determination of any question of fact made during the trial of the cause.   But if it be conceded now, as in the discussion of the other features of appellant's second assignment of error, that the reading to the jury the report of the commissioners was wrong, and that the comments of defendant's counsel in his closing argument to the jury upon the amount of that award, was made as appellant contends, the evils of both these errors were cured by the court's instruction above quoted, whereby the jury were told that in estimating the damages, if any,

done to defendant's land by reason of the location of plaintiff's railroad over and through it, they would not consider or be in any way influenced by the fact that the commissioners allowed to defendant the damages stated in this report. If the amount of the commissioners' award had been eliminated by proper instructions from the consideration of the jury, the comment upon the existence of this fact by the counsel of defendant would likewise be ignored by the jury in following out the direction of that instruction. Finding no substantial error committed against the rights of appellant, the judgment of the trial court is affirmed.

All concur, except *Marshall, J.,* absent.