# MISSOURI PACIFIC RAILWAY COMPANY, Appellant, v. ROBERTS.

### Division One, March 15, 1905.

1. **CONDEMNATION: Commissioners' Award: Reading to Jury.** Where exceptions to the report of the commissioners appointed to assess damages for land taken or damaged in a railroad condemnation proceeding are sustained, and the issues submitted to a jury, it is error to permit the report of the commissioners to be read to the jury, whether the amount awarded by them has been paid into court or to the defendant or not. When the exceptions are sustained, the report of the commissioners is set aside and becomes *functus officio.* Thereafter the jury has no more right to know what the report or assessment of damages of the commissioners was, than any jury in any case has to know what the verdict of a previous jury in the same case was. (Overruling Belt Ry. Co. v. McElroy, 161 Mo. 584.)

2. ——: ——: ——: **Interest on Excess: Province of Jury.** Where the amount awarded by the jury is in excess of the amount awarded by the commissioners and paid by the plaintiff, it is not for the jury to calculate the interest on the excess, and hence they do not need to know what the commissioners' award was. The questions of deducting the amount paid by the plaintiff to defendant, and of interest, and of adjusting the difference between the amount of the verdict and the amount so paid and received, are matters for the court, and not for the jury at all.

Appeal from Clay Circuit Court.—*Hon. J. W. Alex-
ander*, Judge.

REVERSED AND REMANDED.

*Elijah Robinson* for appellant.

(1) The trial court committed error in permitting
the report of the commissioners to be put in evidence
and read to the jury. The only question for the deter-
mination of the jury was as to the amount of damages
that defendant had sustained by reason of the appro-
priation of the 8.3 acres of land in question; and the
admission of the report of the commissioners was in
violation of the fundamental principals of the law of
evidence. Under our system of jurisprudence every
litigant is entitled to have the witnesses against him
sworn to testify the whole truth touching their know-
ledge of the matters in controversy, and he is entitled
to cross-examine them. By the admission in evidence
of the report of the commissioners, the defendant suc-
ceeded in getting before the jury their estimates and
opinions as to the matters in controversy, without any
opportunity whatever on the part of the plaintiff to
cross-examine them. 1 Greenl. Ev., sec. 446; 1 Thomp.
Trials, sec. 406. That the admission of this evidence
was calculated to operate prejudicially to the plaintiff
is too clear to be disputed, and therefore, the judgment
of the lower court should be reversed for this reason,
even if there were no other grounds for reversal. (2)
The trial court committed error in giving defendant's
instruction 7. The court should not have called the at-
tention of the jury to the damages assessed by the com-
missioners. It was entirely immaterial, so far as the
question of fact to be passed upon by the jury was
concerned, what amount of damages had been assessed
by the commissioners, but notwithstanding that fact
this instruction was given, and was calculated to mis-

lead the jury and to induce them to assess damages at an amount equal to or in excess of the amount that had been assessed by the commissioners. Moreover, said instruction was erroneous in that it told the jury that if they should assess defendant's damages at a sum in excess of $7,500, they should allow interest on the excess from the sixteenth day of September, 1901, to the date of the trial. Railroad v. Knapp-Stout Co., 160 Mo. 396. Interest is a creature of the statute. Bradley v. Asher, 65 Mo. App. 593. And the statute does not provide for interest in cases of this kind. Sec. 3705, R. S. 1899.

*Sandusky & Sandusky* for respondent.

(1) There was no error in reading the report of the commissioners to the jury, and respondent was entitled to interest ($6.30) on the $140. Railroad v McElroy, 161 Mo. 584; Webster v. Railroad, 116 Mo. 114. The instructions fully explained the purpose for which the report was read. (2) There was no error in giving instruction 7 for respondent. It was copied from an instruction in 161 Mo. 584, where it is approved. Instruction 8 guards the jury against being misled in any way by reason of the commissioners' report being before the jury.

*Elijah Robinson* for appellant in reply.

Counsel for appellant concedes that the opinion in the case of Railroad v. McElroy, 161 Mo. 584, constituted an excuse, if not a justification, for the action of the trial court in admitting in evidence, on the part of the defendant, the report of the commissioners, but, without the slighest intention to be disrespectful to the court, insists that that opinion is not good law and ought not to be followed. No good reason has been or can be assigned for permitting that report to be

read to the jury. The reason assigned in the opinion in the McElroy case, that is, that it was necessary that the jury should know what the report of the commissioners was to enable them to calculate the interest on the excess, if their finding should exceed that of the commissioners, is no reason at all. The court should have instructed the jury to find and state in their verdict the amount of damage sustained by defendant by reason of the taking of the land in controversy; and upon such a verdict, the court could have entered a proper judgment. If the jury had found that plaintiff had sustained damage in a sum which was in excess of the amount awarded by the commissioners, the court could have rendered judgment for the amount of the excess, with interest thereon from the date when the plaintiff appropriated the land in question if it was legal to allow interest; while, on the other hand, if the jury had found that the damages amounted to a sum less than the award of the commissioners, the court could have rendered a judgment in favor of plaintiff for the difference.

MARSHALL, J.—This is an action under the statute for the condemnation for railroad purposes of eight and three-tenths acres of land, in Jackson county, located about two and a half miles east of the eastern limits of Kansas City, in what is commonly called by the witnesses, the East Bottoms. It consists of a strip of land substantially one hundred feet wide, taken off from the northern side of a tract of fifteen acres held by the defendant in trust for himself and others and the whole tract is practically wedge-shaped, and is bounded by the right of way of the Atchison, Topeka & Santa Fe Railway on the north; by the right-of-way of the Kansas City & Independence Air Line on the south (to the south of which also lie the rights-of-way of the main line of the plaintiff company and of the Chicago & Alton Railway Co.), by substantially the

meanderings of Rock Creek on the east, and its edge or point at its western extremity is at the intersection of the rights-of-way of said Atchison, Topeka & Santa Fe and said Kansas City & Independence Air Line and it lies in the northwest quarter of section thirty-two and the northeast quarter of section thirty-one, township fifty, range thirty-two west.

The commissioners assessed the damages for the land to be taken at $6,225, and the damages to the land remaining at $1,275, aggregating $7,500. The plaintiff paid said money into court, filed exceptions to the report, asked a jury trial, and took possession of the land sought to be condemned. The record does not show any ruling on the exceptions, but for the purposes of this case it will be assumed that the court sustained the same.

At the trial before the jury, the abstract of the record and the briefs of counsel seem to indicate that the defendant introduced his testimony first, and the plaintiff introduced its testimony afterwards. The defendant called twelve witnesses, of whom Judge G. L. Chrisman, John A. Kerr, J. D. Cusenberry, R. C. Maxwell, and M. R. Roberts, the defendant, lived in the neighborhood, and E. H. Phelps, John A. Kerr, W. L. Powell, G. J. Clark, H. C. Gilbert, Thomas Stinson, and Erastus Smith, were real estate agents and were familiar with the property, its location, surroundings, value and the uses to which it is adaptable. They testified on direct examination that the part taken was worth from one thousand to fifteen hundred dollars an acre. The defendant testified that he had bought the whole tract for himself and others two or three years previously, at a partition sale, for one hundred and thirty-five dollars an acre, but that in settling with the heirs, he and Judge Chrisman figured this tract at eight hundred dollars an acre. These witnesses on cross-examination were asked if the land could have been sold upon three months' effort for two hundred and fifty

or three hundred dollars an acre before the condemnation proceedings were begun, and they all said they thought it could, but would not say how much more it could have been sold for. They all said it had a peculiar value for railroad purposes, because it was the only space available, between the river and the bluffs at that point, for another railroad to enter Kansas City through the East Bottoms. Maxwell owns the land immediately east of the part to be condemned, and he sold five acres of his land for a thousand dollars an acre a short time before the suit was begun, but it had a spring on it which he said was the main reason the purchaser wanted it. The defendant testified that about a year before, Mr. Gallagher bought ten acres, at seven hundred dollars an acre, that lie on the bluff above and in the vicinity of his land, and were on the electric line, and was a beautiful piece of land for residence purposes, and that he built a house on it.

Touching the damage to the remaining land, Clark testified that he thought it would be damaged one thousand dollars. Only one other witness for the defendant, to-wit, Gilbert, was asked as to such damage, and he said that he could not see that it was damaged to any great extent, but that it might be damaged some. The defendant, however, claims that owing to the overhead construction of the Santa Fe road, at its intersection with the Air Line, at the western edge of this land, no other road could be built at that point, and hence that the remaining land is necessarily damaged, and that the land condemned is the key to the location; and further that the land remaining is rendered more inaccessible by the construction of a railroad on the portion sought to be condemned.

The plaintiff called ten witnesses, of whom Russell Harriman, who is an attorney residing at Booneville, and had had experience in securing railroad rights-of-way, expressed no opinion as to the value of the land, and the same is true as to C. E. Carson, who

is appellant's superintendent of terminals in Kansas City. Mr. Harriman said, however, that there is no difference in the facilities for getting water from the spring on the Maxwell tract; to the part of the land remaining, from those that existed before the condemnation proceeding was begun, or since the plaintiff took possession, and that the remaining part of the land is not rendered any more inaccessible by taking the land in question here, because it was reached before by a road that ran close to the creek at the east end of the land and is reached by the same road now. Carson testified that the remaining land is not available for switch tracks.

Of the remaining witnesses called by plantiff, S. B. Huff, W. G. Miller, E. A. Haltz, E. S. Truit, L. N. Leslie and M. W. Barber, are all real estate agents in Kansas City, and know the land, the value, etc. They said it was worth from one hundred and fifty to three hundred dollars an acre. Mr. James Fairweather is a lawyer in Kansas City, knows the land and knows the value of land in the East Bottoms in a general way. He said it was worth from two hundred and fifty to three hundred dollars an acre. Mr. W. H. Collins, bookkeeper for the Kansas City Star, but has been dealing in real estate in that city for fifteen years, and knows the land, said it was worth from two hundred and fifty to three hundred dollars an acre.

Over the objection of the plaintiff the defendant was permitted to read in evidence the report of the commissioners, and this is assigned as error.

The court instructed the jury quite voluminously at the request of the parties. No objection is urged against any of the instructions for defendant except those numbered 2, 3, 5 and 7 and instruction 8 given by the court *ex mero motu.*

The jury assessed the value of the land
taken at eight hundred dollars an acre,
aggregating. ................. ..... ......$   6,640.00

| | |
|---|---:|
| Assessed the damage to the remaining land at .......................... | 1,000.00 |
| Making the total damages................ | 7,640.00 |
| Then deducted the amount that plaintiff had paid into court, and that defendant had received ........................ | 7,500.00 |
| Leaving a balance due of................ | 140.00 |
| Then added interest at six per cent on the balance ...................... | 6.30 |
| Making the amount still due the defendant.. | 146.30 |

After proper steps the plaintiff appealed.

The plaintiff assigns three errors, to-wit: first, in permitting the defendant to read the report of the commissioners to the jury; second, error in defendant's instructions 2, 3, 5 and 7, and the court's instruction No. 8; third, that the damages assessed are excessive.

## I.

The first error assigned is the ruling of the trial court in permitting the defendant to read the report of the commissioners to the jury.

The same question was presented to and decided by this court in Railroad v. McElroy, 161 Mo. l. c. 589. In that case it was held, first, that if there was any error in permitting the report of the commissioners to be read to the jury it was cured by the instructions that were given by the court to the effect that the jury must not be influenced in any way by the damages assessed by the commissioners, and that the plaintiff had taken possession of the land and had paid into court, and the defendant had received, the sum assessed by the commissioners (naming it), and that if the jury found the defendant had been damaged in excess of the amount assessed by the commissioners, they should deduct the amount the defendant had received, from the damages assessed by them, and allow the defendant

interest on the excess; and, second, that it was not error to permit the commissioners' report to be read to the jury, because otherwise the jury would not know that the defendant had already received the damages assessed by the commissioners, and would not, therefore, deduct anything from the damages the jury assessed, and would also allow interest upon the whole amount, notwithstanding the defendant had already received and had the use of the damages assessed by the commissioners and paid into court, and that this would be an injustice to the plaintiff. The opinion in that case does not show whether or not the court acted upon the exceptions before the reassessment by the jury, but the record in the case shows that the exceptions were sustained, the commissioners' report set aside, and a new assessment of damages by a jury was ordered.

The statute relating to condemnation of land for railroad, telegraph, telephone and other corporate purposes (art. 7, chap. 12, R. S. 1899) is very crude and needs revision very badly. It attempts to establish a code unto itself, modelled, in some respects, after the statutes in reference to condemnation of land for municipal purposes. Section 1268 permits exceptions to be filed to the report of the commissioners, and provides that the court shall have power to review the report of the commissioners and, "make such order therein as right and justice may require, and may order a new appraisement, upon good cause shown." And then provides that, "Such new appraisement shall, at the request of either party, be made by a jury, under the supervision of the court, as in ordinary cases of inquiry of damages." It then provides, "But notwithstanding such exception, such company may proceed to erect said telephone or telegraph line, or construct said road or railroad; and any subsequent proceedings shall only affect the amount of compensation to be allowed."

This statute and the proper proceedings to be had thereunder underwent adjudication by this court both

before the McElroy case was decided, and since. [Rail-, road v. Clark, 119 Mo. 357; State ex rel. v. Fort, 180 Mo. -97.] Both of these cases were decided In Banc. In Clark's case the rights of the parties, the proceedings to be had, and the form of the judgment, were carefully and elaborately considered and set out. In that case the commissioners assessed the damages at $87,-510, and the railroad company paid the money into court, and took possession of the land and continued thereafter to use it for railroad purposes. The money was not paid over to the defendant, but remained in the registry of the court. Both parties filed exceptions to the report, which the court sustained and ordered a new assessment by a jury. The jury assessed the damages at $72,018. Thereupon the court entered judgment for the defendant for $72,018, with six per cent interest ''from the date of condemnation'' (is the language of the opinion—which clearly means from the date the plaintiff took possession) until the verdict, amounting in all to $74,418.78. But the court further ordered and adjudged that said sum of $74,418.78 be paid out of the fund of $87,510 deposited in court by the plaintiff, and that the balance of the fund so deposited should be paid to the plaintiff, and made a further order apportioning the costs. From this judgment the plaintiff appealed, giving a supersedeas bond. Thereafter, the defendant moved the court to order the clerk of the court to pay over to him the $87,510, so deposited in court. The court overruled the motion, and the defendant appealed to this court.

It was held, first, that the plaintiff was entitled to receive the amount deposited in court, being the damages assessed by the commissioners, immediately upon its being so deposited, and to retain it until the final determination of the case, and that the subsequent filing of the exceptions to the report, the sustaining thereof, the trial anew by a jury, and the appeal, did not affect plaintiff's right thereto; second, that if the

Railroad v. Roberts.

amount so received was less than the amount assessed by the jury, it was in the province and power of the court to order the plaintiff to pay the difference to the defendant, and that the right of the plaintiff to possession should cease until the same was paid; but if the verdict of the jury was less than the amount assessed by the commissioners and paid by the plaintiff to the defendant or into court for him, it was perfectly proper for the court to adjudge that the defendant refund to the plaintiff such difference and to enforce the payment thereof, as was the judgment in that case.

In short the gist of that case is, as the statute (secs. 1266 and 1268, R. S. 1899) clearly means, that when the commissioners have assessed the damages to the landowner for the property to be taken, the plaintiff shall pay the amount assessed into court, and thereupon it may take possession of the land. If the plaintiff fails so to do, the defendant may ask the court for an execution therefor, which the court will grant, unless the plaintiff elects to abandon the proceedings within ten days. If the plaintiff pays the money into court, it may file exceptions to the assessment of damages. If the defendant receives the money he may, notwithstanding such receipt of the money, file exceptions. The court must then act upon the exceptions and may make such order as right and justice may require and may order a new appraisement, and if it does so order, either party has an absolute right to a trial by jury. The jury tries the question *de novo*. The only proper matter for the jury to consider or include in their verdict is the amount of damages the defendant is entitled to by reason of the condemnation of the land. All other questions, as to the allowance of interest, the adjustment between the plaintiff and defendant of the difference between the verdict and the amount deposited by the defendant and received by the plaintiff, are matters for the court, to be settled thereafter. The jury

has nothing to do with such matters, and should not be allowed to know what the commissioners did.

The Clark case was cited, approved and followed so far as applicable, in the Fort case, supra, and the same construction was placed upon the statute, and that case also involved a question of a right of abandonment by the plaintiff in a condemnation proceeding.

The Clark case seems to have been overlooked by both counsel and the court in the McElroy case, for it is not referred to either in the briefs of counsel or in the opinion of the court.

It is manifest that the ruling in the McElroy case is out of harmony with the prior decision in the Clark case, as it is also with the subsequent decision in the Fort case. Both of those cases were decided by this court In Banc.

The instructions given in the McElroy case, that the jury should not consider or be influenced by the assessment of the commissioners, and telling the jury that the plaintiff had paid and the defendant had received a certain amount, and that the jury should deduct that amount from the damages assessed by them, if the assessment exceeded that amount, and should allow interest on the excess only, and the reasoning in that case employed to justify the giving of such instructions, to-wit, that otherwise the jury would return a verdict for the whole damages, with interest, which would be unjust to the plaintiff, all arose from the attempt by the trial court to correct the error of allowing the report of the commissioners to be read to the jury, and from not knowing the rule laid down by this court in the Clark case that the question of deducting the amount paid by the plaintiff to the defendant, and of interest, and of adjusting the difference between the amount of the verdict and the amount so paid and received, were matters for the court and not for the jury at all.

A new assessment by a jury can never be had,

unless the court sustains the exceptions and so orders.

When the exceptions are sustained, the report of the commissioners is set aside and becomes *functus of-ficio* except for the purposes hereinafter indicated. The jury have no more right to know what the report or assessment of damages of the commissioners was, than any jury in any case has to know what the verdict of a previous jury was in the same case. The jury in such cases has only one duty to perform, and that is to assess the damages the defendant will sustain by the appropriation of his land to public use. All other questions arising in any manner in the case, are matters for the court to settle in its judgment. The rule laid down in the Clark case and reiterated here, is in accord with the law in other jurisdictions. 2 Lewis on Eminent Domain (2 Ed.), sec. 449, states the law as follows: ''On appeal from the commissioners and trial *de novo*, the report appealed from is not evidence as to the amount of damages.''

The author cites cases supporting the text from Indiana, Iowa, Wisconsin, Kansas, Rhode Island, and Massachusetts.

The case of Railroad v. McElroy, 161 Mo. 584, does not correctly state the law and it is therefore overruled.

In the case at bar, the trial court permitted the report of the commissioners to be read to the jury, and then attempted to correct the error by giving instructions exactly similar to those given in the McElroy case, and which counsel say were copied from that case, whereby the jury were told not to be influenced by the award of the commissioners, and that the defendant had paid and the plaintiff had received the $7,500 awarded by the commissioners, and that if the jury found that defendant had sustained damages in excess of such seventy-five hundred dollars, they should deduct that amount from the amount so found by them

and return a verdict for the excess and allow interest on the excess.

This was error, for the reasons hereinbefore given. It was also error for another reason, to-wit, that if such matters were matters to be determined by the jury, the instruction did not tell the jury what to do in the event they assessed the damages at a sum less than seventy-five hundred dollars. It is true that mere nondirection is not error in civil cases. But such an instruction in such a case as this, by leaving out this element, is clearly suggestive and misleading, for it assumes that the verdict will exceed the award of the commissioners and directs the form of the only verdict which the jury is to render, and that form does not contemplate that the verdict may be for a lesser sum than, or even the same amount as, the award of the commissioners. This, however, is merely by way of further illustration, for the award should not have been permitted to go to the jury and hence no such instruction would have been necessary.

The trial court erred in this regard, and its judgment must be reversed. As this disposes of this case at this time it is unnecessary to review the other assignments of error.

The judgment of the circuit court is reversed and the cause remanded for trial anew by the jury and court according to the principles herein announced.

All concur.