## ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY v. LENORE P. PFAU, Appellant.

### Division Two, May 19, 1908.

1. **CONDEMNATION: Report of Commissioners as Evidence.** It is error to permit to be read to the jury the award or report of the commissioners in a condemnation proceeding.

2. ————: **Report: Exceptions: Jury Trial.** Upon the filing of their report by the commissioners, and the filing of exceptions thereto by the landowner, the landowner is entitled to a jury trial to determine the amount of damages, as of course, and without any order of court sustaining or overruling the exceptions, and that, too, though the railroad company may have paid into court for the landowner the amount of the commissioners' award and he may have received the amount. [Overruling Railroad v. Roberts, 187 Mo. 309.]

3. ————: ————: **Instructions.** Where the jury is called to assess the damages in a condemnation proceeding, the instructions should not tell the jury to consider the award of the commissioners already paid by the railroad company. Nor should they tell the jury that it devolves on the landowner to show that the award was inadequate, nor that the verdict should be the difference, if any, between the award of the commissioners and any increased damages they may believe the landowner has sustained. The jury has nothing to do with the commissioners' award. It is their duty to assess the damages from the evidence, and if their verdict shows damages in excess of the award of the commissioners, it is the duty of the railroad company, if that award has been paid and received, to call the court's attention to that fact, and to have the judgment to be for the difference between the verdict and the award; or if the verdict is less than the award already paid and received, the landowner should be adjudged to refund the excess.

4. ————: **Fire: Depreciation.** The instruction on the question of danger by fire to defendant's buildings and a possible depreciation of the land by reason thereof, should not tell the jury that they are "not to consider such element of damages at all unless the buildings or other property are in proximity to the railroad." Diminution in the value of the landowner's land, including the buildings thereon, by reason of the location and construction of the railroad through the land and the consequent increased risk of fire from passing locomotives, is an element of damages.

Railroad v. Pfau.

5. ————: **Removal of Buildings.** The landowner is not entitled to compensation for buildings on the land condemned which the railroad company, as it had a right to do, removed at its own expense, the landowner retaining possession thereof. The measure of damages in such case is not the value of the buildings before removal, but the damage, if any, which the property sustained in being removed.

Appeal from Lawrence Circuit Court.—*Hon. F. C. Johnston,* Judge.

REVERSED AND REMANDED.

*Henry Brumback* and *Joe J. Manlove* for appellant.

(1) The report of the commissioners afforded no standard for measurement of damages by the jury, but defendant is entitled to a trial *de novo* by a jury uninfluenced by the opinion of the commissioners. Constitution of Missouri, art. 2, sec. 21; art. 12, sec. 4; R. S. 1899, sec. 1268; Railroad v. Roberts, 187 Mo. 316; Wellington v. Railroad, 33 N. E. (Mass.) 393; Brown v. Railroad, 71 Mass. 35. (2) The mere fact of filing written exceptions by defendant, superseded the report of the commissioners, and entitled defendant to trial *de novo* by jury, without any order of court to such effect. Constitution of Missouri, art. 12, sec. 4; Railroad v. Miller, 106 Mo. 461; Railroad v. Elliott, 108 Mo. 322; Railroad v. Bates, 109 Mo. 53; Thompson v. Railroad, 110 Mo. 160; Rothan v. Railroad, 113 Mo. 142; Railroad v. McGrew, 113 Mo. 393; Railroad v. Story, 96 Mo. 620. (3) It was error to refuse defendant's instruction 5, which directs that, in estimating her damages, the jury shall pay no attention to or take into consideration in any way the award of the commissioners; and to give plaintiff's instructions 9 and 10, to the reverse effect, that such award must be shown by defendant to be inadequate and that their verdict should be for the difference between the award

and any increased damages sustained by her. Constitution of Missouri, art. 12, sec. 4; Railroad v. Donovan, 149 Mo. 104; Railroad v. Russell, 150 Mo. 453; Railroad v. Roberts, 187 Mo. 309; Wellington v. Railroad, 33 N. E. 393, 158 Mass. 185. (4) Instruction 5, given for plaintiff, relating to depreciation of defendant's property from liability to fires, improperly contains the qualifications: "And you will not consider such element of damages at all, unless the buildings or other property are in proximity to the railroad," under the facts in evidence. Mathews v. Railroad, 121 Mo. 338; Railroad v. Mendonsa, 91 S. W. 65. (5) Instruction 7, given for plaintiff, wrongfully casts upon defendant to establish her damages by a preponderance of evidence. Bennett v. Woody, 137 Mo. 383. (6) The verdict is not responsive to the issue, and is insufficient to support the judgment entered. The sole question at issue, and submitted, is, how much defendant is entitled to be paid, while the verdict names no sum, but is a bare "find for plaintiff."

*Martin L. Clardy* and *Edw. J. White* for respondent.

(1) The trial court must set aside the award and sustain the exceptions before there is anything for a jury to try and "a new assessment by a jury can never be had, unless the court sustains the exceptions and so orders." Railroad v. Roberts, 187 Mo. 320; R. S. 1899, sec. 1268; State ex rel. v. Dearing, 173 Mo. 492; St. Louis v. Abelen, 170 Mo. 318; Railroad v. Richardson, 45 Mo. 466; Railroad v. Robinson, 45 Mo. 483; Railroad v. Ridge, 57 Mo. 599; Hannibal Bridge Co. v. Schaubacher, 49 Mo. 555; Miss. River Co. v. Ring, 58 Mo. 491; Railroad v. Alemoth, 62 Mo. 343; Cape Girardeau & C. Co. v. Dennis, 67 Mo. 438; Railroad v. Atchison, 137 Mo. 218; In re Opening of Cromwell Avenue, 181 N. Y. 549; Railroad v. Railroad, 99 Va. 715; Gage v. Judson,

111 Fed. 350; U. S. v. Freeman, 113 Fed. 350; In re Brookfield, 79 N. Y. Supp. 1022; Railroad v. Crossman Heirs, 111 La. Ann. 611; St. Louis v. Lanigan, 97 Mo. 175; Railroad v. Randolph, 103 Mo. 451. (2) As the award of the commissioners had never been set aside by the court, it was final and binding on both parties to this controversy in the trial court, but, in any event, on the admission of the defendant that she had received the amount of the award, it was competent to introduce it in evidence, so that plaintiff could receive credit for the payment which the record showed it was entitled to, for, "where there has been paid to the landowners the amount of the commissioners' award . . . . . the judgment should not be for the entire amount of the verdict, but for the difference between the award and the verdict." Railroad v. Russell, 150 Mo. 453. (3) After admitting the award of the commissioners, the instructions given by the court were much more favorable than the defendant was entitled to, as they all assumed that the verdict would equal or exceed the amount of the award, and, as said by this court in Railroad v. Roberts (137 Mo. 322), "it assumes that the verdict will exceed the award of the commissioners and directs the form of the only verdict which the jury is to render, and that form does not contemplate that the verdict may be for a lesser sum, or even the same amount as the award of the commissioners" and because this theory of the case, together with the award in evidence, practically denied the railroad company the benefit of a less verdict than the award, it was held error against the railroad company, because denying it a substantial right in the case. (4) It is proper for the court to instruct the jury that, in assessing damages, they could not allow damages because of the danger to buildings from fire, unless the evidence shows that the buildings are near enough to the track to be

212 Sup—26

likely to be destroyed by the sparks from passing trains; otherwise damages from such a source are too speculative to be considered. This was what plaintiff's instruction 5 told the jury. Conness v. Railroad, 193 Ill. 464. (5) The danger from fires as an element of compensatory damages is an extremely speculative element at best, and it is held, in this State, to be competent only as affecting the market value of the land, and defendant's instructions on this element of damage were far more favorable to her than the law allowed. R. S. 1899, sec. 1111; Railroad v. Mendonsa, 193 Mo. 525; Railroad v. Donovan, 149 Mo. 93; Railroad v. North, 31 Mo. App. 345. (6) Where the defendant landowner has assumed the right to open and close the case, both in the introduction of evidence and in the argument—as the defendant did, in this case— this court held that it was not error for the court to instruct the jury that the burden was on defendant to show damages to the land. Railroad v. Knapp, Stout & Co., 160 Mo. 396; Douglas v. Railroad (Ind.), 76 N. E. 892; Railroad v. North, 31 Mo. App. 351. (7) No objections can be urged, in this court, because the verdict of the jury was irregular, or was not responsive to the issues framed, because defendant filed no motion in arrest of judgment in the trial court. "An imperfect verdict or finding, or a neglect to find on all the issues, can be taken advantage of only by motion in arrest." Wells v. Adams, 88 Mo. App. 228; Finney v. State, 9 Mo. 636; Davidson v. Peck, 4 Mo. 445; Johnson v. Bedford, 90 Mo. App. 47; Erdbnuegger v. Meier, 14 Mo. App. 258; Warner v. Morin, 13 Mo. 455; 2 Ency. Pl. & Pr., 794, 795.

BURGESS, J.—This action was instituted by plaintiff to condemn a right of way over the land of defendant in Lawrence county. The petition was filed December 31, 1903, against several landowners, in-

cluding the defendant. It alleges, in substance, that plaintiff is a railroad corporation; that the White River Railway Company is a corporation, authorized to construct a railroad from Batesville, Arkansas, to Carthage, Missouri; that the latter company made and filed a profile map in the office of the clerk of the county court of Lawrence county, Missouri, and that, afterwards, said company transferred its franchise to plaintiff; that it needs for its right of way, etc., a strip of land fifty feet wide, being fifteen feet on the north side and thirty-five feet on the south side of the center line of the roadbed and track of the St. Louis, Iron Mountain and Southern Railway, said center line being described as follows, to-wit: ''Beginning at a point on the west line of the north half of lot two of the southwest fractional quarter of section seven, at a point 213.1 feet south of the northeast corner, and running thence in an easterly direction a distance of 930 feet to a point 33 feet south of the line of the right of way of the St. Louis and San Francisco R. R. Company, said strip containing 1.06 acres, being in township 26, of range 25;'' that the defendant, Lenore P. Pfau, is the owner of such land and is a non-resident, and that plaintiff has been unable to agree with her as to the price of such strip. The petition asks that commissioners be appointed to assess her damages.

The commissioners were appointed, and on January 28, 1904, they filed their report, awarding $808 to the defendant. Being notified of the filing of such report, the defendant, on February 5, 1904, filed her written exceptions thereto, stating that such award of the commissioners was inadequate compensation for her property taken and damaged by plaintiff, and asking that the report and award be set aside and her just compensation for the taking and damaging of her property by the plaintiff be ascertained by a jury.

Plaintiff filed reply to such written exceptions, "denying each and every allegation in said exceptions alleged."

Said strip of land condemned for plaintiff's right of way ran east and west across the north end of defendant's fifteen-acre tract, and contained about one and six-hundredths acres. Between the right of way and the extreme north end of said tract which bordered on the roadbed of the St. Louis and San Francisco Railroad was a strip seventy feet wide at one end and seventeen feet wide at the other. The land was inside the limits of the city of Aurora, distant a few blocks from the business center, and had been mined for lead and zinc for over fifteen years. There were several shafts sunk in the land, and a large amount of valuable ore had been extracted, but there had been no mining done on the land for a year previous to the trial. These shafts all lay south of the right of way except one which had been sunk to a depth of about sixty feet in the strip condemned, but this produced little or no mineral, the formation being lime rock. None of the other mines were nearer than 150 feet to the right of way, and none of the drifts from said mines extended under any part of the strip in question. On the north part of defendant's tract of land were eleven "ordinary, cheap, frame buildings," three of which buildings were on the right of way, and one between the same and the St. L. & S. F. Railroad. The plaintiff removed the three cottages and placed them on another part of the tract, and partially repaired the damages done the cottages by the removal. The rental value of the eleven cottages, according to the evidence, was lessened to the extent of $27 per month by reason of the construction of plaintiff's road so near them. As a result of mining operations of previous years there was a large pile of "waste and tailing" on the strip appropriated for the right of way, and these surface deposits had been

leased to two men who used hand jigs to extract ore therefrom, and paid a royalty to the defendant of twenty per cent. The revenue derived by the defendant from this source amounted to six hundred dollars in a period of two years. There was very little lead in these deposits, but there was considerable silicate extracted therefrom, which sold for ten dollars a ton. One of the men who worked in this way was given $37.50 by the commissioners to remove his jig and abandon his claim to the pile of waste on the right of way. He testified that he wanted $50 for this, but rather than have a lawsuit he took the sum offered him.

Before the tract of which the strip in question formed a part was acquired by the defendant, the title was placed in her mother's name, but the defendant's father, Louis Pfau, looked after it for her. Mrs. Pfau sold the land to one Ed. T. Warren, a mining man of Cripple Creek, Colorado, for the consideration of "one dollar and other valuable considerations," about the time of an attachment against the said tract, but it was denied that the property was put in his name on account of the attachment. Afterwards, the defendant, as her father testified, purchased the land from Warren by giving him therefor $35,000 of stock in a Cripple Creek mining corporation which had a total capital of $5,000,000. There was no mining done on the land since the purchase thereof by the defendant, and her only income therefrom was in the shape of rent for the little cottages and the small amount of royalty from the surface washings.

The damages to the defendant and her land were variously estimated by the witnesses, from $17,945 by Louis Pfau, to $250 or $300 by John A. Williams. One witness testified that it was questionable in his mind, considering the benefits to the land by the location of the railroad, whether the land was damaged at all or not.

At the close of all the evidence in the case, the plaintiff offered and the court admitted in evidence the report of the commissioners, and it was admitted by counsel that defendant had received the amount of the award, eight hundred and eight dollars.

The cause being submitted to the jury, they returned the following verdict: "We, the jury, find the issues for the plaintiff."

Thereafter, on March 15, 1905, the court entered judgment that "defendant take nothing by reason of her exceptions to the award of the commissioners," but that plaintiff recover of her its costs, and that "plaintiff is invested with the right to hold, use and enjoy, for the uses and purposes of a right of way for the aforesaid railway, the following strip of land," etc.

The defendant filed a motion for a new trial, which was overruled by the court, whereupon she appealed.

The first assignment of error relates to the action of the court in permitting to be read to the jury, over the objection of the defendant, the report of the commissioners awarding her $808 damages, and in connection therewith instructing the jury that the burden was upon the defendant to show by a preponderance of evidence that the award of the commissioners in the case was inadequate to compensate her for the damages from the occupation of the tract in question, and that, in making up their verdict, it should be for the difference between the award of the commissioners and any increased damages they might believe the defendant had sustained.

It is argued that section 4, article 12, of the Constitution of Missouri, guarantees to the defendant the right of trial by jury, and not a mere comparison of opinions between a previous commission and the jury.

Said section of the Constitution provides that, "The right of trial by jury shall be held inviolate in all trials of claims for compensation, when in the exer-

cise of said right of eminent domain, any incorporated company shall be interested either for or against the exercise of said right.''

In Railroad v. McElroy, 161 Mo. 584, it is held that if there was any error in permitting the report of the commissioners to be read to the jury, it was cured by the instructions given to the jury, to the effect that they should not be influenced in any way by the damages assessed by the commissioners, and that as plaintiff had taken possession of the land and had paid into court the damages assessed, and the defendant had accepted the money, the amount of that award might become a fact that the jury should know to estimate properly the amount of verdict they should return for the defendant, and that if the jury found that the defendant had been damaged in excess of the amount assessed by the commissioners, they should deduct the sum the defendant had received from the amount allowed by them to the defendant, and allow the defendant interest on the excess. It was also held in that case that there was no error in permitting the report to be read to the jury, for the reason that the jury would not otherwise know that defendant had already received the amount allowed by the commissioners and would not, therefore, deduct anything from the amount of damages the jury assessed. In that case the defendant had filed exceptions to the commissioners' report, which were sustained, and a new assessment of damages made by the jury.

In Railroad v. Roberts, 187 Mo. 309, upon which both parties rely, the case of Railroad v. McElroy, supra, is expressly overruled, the court holding that where exceptions to the report of the commissioners appointed to assess damages for land taken or damaged in a railroad condemnation proceeding are sustained, and the issues submitted to a jury, it is error to permit the report of the commissioners to be read in

evidence, whether the amount awarded by them has been paid or not. The court further said:

"The jury have no more right to know what the report of assessment of damages of the commissioners was, than any jury in any case has to know what the verdict of any previous jury was in the same case. The jury in such case has only one duty to perform, and that is to assess the damages the defendant will sustain by the appropriation of his land to public use. All other questions arising in any manner in the case are matters for the court to settle in its judgment. The rule laid down in the Clark case and reiterated here is in accord with the law in other jurisdictions. Lewis on Eminent Domain (2 Ed.), sec. 449, states the law as follows: 'On appeal from the commissioners and trial *de novo,* the report appealed from is not evidence as to the amount of damages.'"

In the case of Railroad v. Clark, 119 Mo. 357, referred to, it was held that when the compensation was finally determined, the court had the undoubted right to adjudge the rights of the parties under the entire proceedings; that if the landowner had been paid more than the amount of the final judgment, he could be adjudged to refund, and that if the judgment for damages exceeded the award of the commissioners, the corporation could be made to pay the excess, and its right to possession would cease until the same was paid to the landowner or into court for him.

So it was held in Wellington v. Railroad, 158 Mass. 185, that the award of commissioners was properly excluded. It seems to have been offered for the purpose only of showing their estimate of the damages, which amounted to nothing more than the opinion of the commissioners, without even affording the petitioner, in this case the defendant, an opportunity for cross-examination, or enabling the jury to weigh the opinion in connection with their appearance while testifying.

For these intimations we think the court·committed error in permitting the report of the commissioners to be read in evidence to the jury.

Defendant insists that the mere filing of the written exceptions by her superseded the report of the commissioners, and entitled her to a trial by jury without an order setting aside the report of the commissioners.

Section 1266, Revised Statutes 1899, gives the circuit court, or the judge thereof in vacation, power to appoint commissioners to assess damages, the property-owners being first served with summons, and makes it the duty of the commissioners to review property, assess the damages, and make report thereon to the court, "and thereupon the said company shall pay to the said clerk the amount thus assessed, for the party in whose favor such damages have been assessed; and on making such payment it shall be lawful for such company to hold the interest in the property so appropriated for the uses aforesaid."

Section 1268 provides that said report may be reviewed upon exceptions filed within ten days after the notice of the filing of the same, and then proceeds to say, "and the court shall make such order therein as right and justice may require, and may order a new appraisement, upon good cause shown. Such new appraisement shall, at the request of either party, be made by a jury, under the supervision of the court, as in ordinary cases of inquiry of damages; but notwithstanding such exceptions, such company may proceed to . . . . construct said road or railroad; and any subsequent proceedings shall only affect the amount of compensation to be allowed."

It is clear from the statute that when the commissioners' report is filed with the clerk, and the amount of damages assessed by the commissioners paid into court for the landowner, the railroad company may

proceed with the construction of the road; but this does not deprive the landowner of his right, under the Constitution, to have the damages assessed by a jury, upon filing exceptions to the report and asking that this be done, although, as in this case, the landowner may have accepted the amount of damages allowed by the commissioners and the exceptions to their report may not have been sustained or overruled. [Sec. 4, art. 12, Constitution of Missouri; Railroad v. Miller, 106 Mo. 458; Railroad v. McGrew, 113 Mo. 390; Railroad v. Story, 96 Mo. 611; Railroad v. Woodard, 193 Mo. 656.]

The cast last cited is exactly in point, in that no formal order was made setting aside the report of the commissioners, and this was assigned as error. The court said: "There is nothing in this assignment. On filing his exceptions the respondent had the constitutional right to have his damages assessed by a jury, and the court had no discretion in the matter. The calling a jury to assess his damages was such order 'as right and justice required.' "

It follows from these authorities that what was said in Railroad v. Roberts, supra, that "a new assessment by a jury can never be had unless the court sustains the exceptions and so orders," is not in accord with the decisions of this court both before and since that case was decided, and should not longer be followed.

The defendant contends that the court erred in refusing instruction numbered 5 asked by defendant, which tells the jury that, in determining the damages, they should pay no attention to, or take into consideration in any way, the award of the commissioners, and in giving plaintiff's instructions numbered 9 and 10, to the effect that it devolved upon the defendant to show that the award was inadequate, and that the verdict should be for the difference, if any, between the award of the commissioners and any increased dam-

ages the jury might believe the defendant sustained.

In Railroad v. Donovan, 149 Mo. 93, the record did not show that the defendant had in fact received the money deposited by plaintiff with the clerk in payment of the damages awarded by the commissioners. But it was expressly held that there was no error in the judgment, which was for the full amount of the verdict, without any deduction of the amount deposited. The court said: ''The judgment followed the verdict, as it should have done. The deposit did not operate on the verdict, but on the judgment after it was rendered, as a payment *pro tanto* thereon, to be applied as such under a proper order of the court.''

In Railroad v. Russell, 150 Mo. 453, Judge VALLIANT, speaking for the court, said: ''It was urged in the Donovan case, and is urged with renewed force here, that the defendants were not entitled to a judgment for the full amount of the jury's verdict, when it appeared that they had already received a large part of the amount in the form of the commissioners' award. The principle contended for by plaintiff's counsel is correct, and if the facts in the case are as claimed, and if they had been brought to the attention of the trial court at the time, the judgment should have contained a recital of those facts and should have been rendered for only the difference between the award of the jury and the amount already received by the defendant.'' The trouble in that case was that the attention of the court at the time of the rendition of the judgment was not called to the fact that the defendant had been awarded and had received $4,007 allowed him by the commissioners for his damages, and hence rendered judgment in defendant's favor for the full amount of damages allowed by the jury, to-wit, the sum of $5,500, without deducting therefrom the amount received by him, which should have been done. The court expressly said: ''The matter, for the purpose of giving

the plaintiff credit for any payment to which the record in the circuit court may show him entitled, is still in the hands of that court.''

Plaintiff relies upon St. Louis v. Abeln, 170 Mo. 323, as supporting its contention that a new assessment can never be had unless the court sustains the exceptions and so orders. But that case is to be differentiated from the case at bar. That was an appeal from the judgment of the trial court upon exceptions to the report of the commissioners, while in the case at bar the appeal is from the judgment of the court below upon the amount of damages awarded to the landowner, regardless of the report of the commissioners.

What was said by the court in Railroad v. Railroad, 118 Mo. l. c. 614, to the effect that the defendants were heard on the matter both by the commissioners and by the court, upon their motion to set aside the report of the commissioners, which was subject to review and approval or to be set aside by the court as it felt authorized, was said with respect to the report of the commissioners, appointed to fix and determine the points and manner of crossing, and connections sought to be made by the petitioner with and over defendant's tracks and right of way, to hear evidence, etc., and, like the preceding case, was not an appeal from an assessment of damages by the court and jury. State ex rel. v. Dearing, 173 Mo. 507, is of a similar character.

The rule to be deduced from these authorities is that the report of the commissioners in a condemnation proceeding by a railroad company is not admissible in evidence upon the trial of the cause before the court and jury, upon an inquiry with reference to the damages sustained by the landowner by reason of the location and opening of the road upon and through his lands; that no instructions should be predicated upon such evidence, and that the landowner, upon filing

exceptions to the report of the commissioners, and so requesting, is entitled to have the damages assessed by a jury, whether the report of the commissioners be first set aside or not; and if the damages allowed the landowner by the jury be in excess of the damages allowed him by the commissioners and received by him, the court has the right to deduct the amount received by the landowner from the amount of the verdict, and render judgment in his favor for the excess.

The point is made by defendant that instruction number 5, given for plaintiff, upon the question of danger by fire to defendant's buildings and possible depreciation of her land by reason thereof, improperly contains these qualifications: "And you will not consider such element of damages at all unless the buildings or other property are in proximity to the railroad."

In the case of Railroad v. Mendonsa, 193 Mo. 518, the decisions of this court upon this question were reviewed, and it was held that, "in estimating the damages to the landowner in a condemnation proceeding brought by a railroad company, the jury may take into consideration the diminution in the value of the land not taken caused by the risk of fire from passing locomotives, but cannot take into consideration any loss or damages to the land not taken that may thereafter be done by an actual fire which destroys or injures the property, but which may never occur. And instructions in a condemnation case should differentiate between the risk of fire, and actual loss after the fire has occurred. Depreciation in the value of property caused by the risk of fire, is a proper element of damage in the condemnation case; loss or destruction by actual fire can be compensated for by a separate action after the fire has occurred." [Following Railroad v. McGrew, 104 Mo. 282; Mathews v. Railroad, 121 Mo.

298; Railroad v. Donovan, 149 Mo. 93; Railroad v. Shoemaker, 160 Mo. 425.]

It is, therefore, manifest that the instruction complained of, in so far as it excluded from the consideration of the jury the question of diminution in the value of defendant's land, including buildings thereon, by reason of the location and construction of the railroad through the land and consequent risk of fire from passing locomotives, is erroneous.

Defendant also complains of the action of the court in refusing the sixth instruction asked by her, to the effect that in estimating the damages, the jury should take into consideration and allow her the actual, fair market value, at the time it was taken, of the strip of land for the right of way, and of all buildings on such strip, and in giving instruction number 8, asked by plaintiff, which tells the jury that "in estimating the damages due the defendant in this case, you will not allow her the value of the buildings located upon the right of way, nor the expense of removing said buildings, as the evidence shows that defendant retains possession of said buildings and that the same were removed at the expense of plaintiff."

According to the strict letter of the law, the instruction asked by defendant upon this feature of the case is correct, but the law should not be so enforced as to do palpable injustice to any one, when it can be avoided by tempering it with a little justice. Now, to allow the defendant compensation for buildings which plaintiff, as it had a right to do, removed at its own expense from the right of way, the defendant retaining possession of such buildings, would be the grossest injustice to the plaintiff. The measure of damages, under the circumstances, should not be the value of the buildings before removal, but the damage the property sustained, if any, in being removed. We are constrained to hold that the court did not err in refusing

defendant's instruction nor in refusing the instruction asked by plaintiff.

Our conclusion is that the judgment should be reversed and the cause remanded, to be tried in accordance with the views we have expressed.

All concur.