Submitted on briefs June 23, reversed and remanded July 28, costs taxed September 8, rehearing denied September 29, petition for further opinion denied October 6, petition to recall mandate denied November 17, 1925.

## LEW WALLACE v. AMERICAN LIFE INSURANCE CO. OF DES MOINES, IOWA.

### (237 Pac. 974.)

Estoppel — Plea of Estoppel, Merely Referring to Sources from Which Evidence to Support Plea may be Obtained, and not Stating Facts on Which Plea Based, is Defective.

1. An attempted plea of estoppel, which does not state the facts on which the pleader bases the plea, but merely refers to sources from which evidence might be adduced to support the plea, is defective.

Estoppel—Pleadings of Estoppel Strictly Construed.

2. For the reason that a plea of estoppel forbids party against whom invoked from even averring the truth, pleadings of estoppel are strictly construed.

Insurance — Premium Money in Hands of Agent Constitutes a "Debt" in Favor of Insurance Company for Whom Collected.

3. Insurance money, collected by agent and in his hands, which belonged to and was property of insurance company, constituted a

1. Mode of, and necessity for, pleading estoppel, see note in 27 Am. St. Rep. 344.
2. See 10 R. C. L. 844.

"debt," in favor of insurance company against agent, inasmuch as claim could have been discharged by payment of certain sum of money.

**Insurance—Covenant in Control by Agent not to Enter Employment of Another While Indebted to Defendant Held Separate and Independent Covenant.**

4. Covenant in contract entered into by plaintiff, whereby he agreed that while indebted to defendant insurance company he would not enter the employment of any other company or person engaged in the life insurance business, under penalty of forfeiting all claims whatever against defendant, *held* a separate and independent covenant made by him without reference to any corresponding or dependent one on part of defendant.

**Insurance—Plaintiff, Breaching Independent Covenant of Contract Entered into With Defendant, must Take Consequences, Irrespective of Breach or Action by Defendant.**

5. Where plaintiff covenanted with defendant insurance company not to enter employ of another insurance company while indebted to defendant, performance of such covenant was clearly within plaintiff's own power, and did not depend on and was not controlled or affected by any action or breach of defendant company, and if plaintiff chose to breach such covenant he must take consequences appended to such covenant, viz., to forfeit all claim accruing or to accrue to him against defendant under contract.

**Insurance—Action by Plaintiff for Damages for Breach of Contract Held a Claim Accruing Under Contract.**

6. In action by plaintiff against defendant, plaintiff's assertion of damages for breach of insurance agency contract was a "claim" accruing under the contract, for without the contract he would have had no cause of action of any kind.

**Words and Phrases—"Claim."**

7. The word "claim" is of very wide significance, and includes any demand for damages.

From Multnomah: C. M. THOMAS, Judge.

In Banc.

REVERSED AND REMANDED.    COSTS TAXED.    RE-HEARING DENIED.

For appellant there was a brief over the names of *Messrs. Joseph, Hanley & Littlefield* and *Mr. Guy C. H. Corliss.*

For respondent there was a brief over the names of *Mr. J. M. Scudder, Mr. J. Hunt Hendrickson, Mr. Coy Burnett* and *Mr. W. Burnett.*

BURNETT, J—In this case we are confronted with the evil of a plethoric record when the vital issues of the case are properly condensed within narrow limits. On the former hearing the principal things decided were that under the pleadings as they then existed there was sufficient evidence to take to the jury the question of defendant's breach of the contract; that expert testimony as to the value of the contract to the plaintiff was not admissible and that a certain letter offered in evidence was rightly excluded on the ground that it was an offer of compromise: *Wallace* v. *American Life Ins. Co.*, 111 Or. 510 (225 Pac. 192, 227 Pac. 465). The cause having been returned to the Circuit Court for new trial, the defendant filed an amended answer raising fresh issues to be tried. Among them was the second affirmative defense, reading:

"Said defendant for a second affirmative defense alleges:

"I.

"That the said contract Exhibit 'A' contained, among other provisions, the following:

" 'Said second party covenants and agrees that he will not during any time while indebted to the first party, should such indebtedness arise, enter into the employment of any other person or company in the business of life insurance. Any violation of this agreement shall cause a forfeiture by the second party to the said first party of all claims whatever accrued or to accrue hereunder.'

"II.

"That on or about July 1, 1921, the said plaintiff, while indebted to the defendant in the sum of $4,739.-34 on account of moneys in the hands of the plaintiff belonging to defendant under the terms of said contract, entered into the employment of the Canada Life Insurance Company of Toronto, Canada, under

an agency contract entered into between him and the said company, under the terms of which said plaintiff was given the agency of said insurance company for the State of Oregon, and that the said plaintiff ever since said time has been and still is acting as such agent for said company.

"III.

"That by reason of the foregoing facts, the said plaintiff under the terms of said contract forfeited all claims, accrued or to accrue, under the said contract Exhibit 'A.' "

The reply to this defense is as follows:

"Replying to second affirmative defense set out in said answer, plaintiff denies each and every allegation therein contained except such thereof as are direct and unqualified admissions of the allegations contained in said amended and supplemental complaint; and in this connection plaintiff further alleges that defendant is estopped to make any claim in connection with any employment of plaintiff subsequent to May 18, 1921, for the reason that, as shown by the records and files in this court and cause and otherwise, defendant at the time of its claimed ending of the contract herein involved assigned as its reason therefor the failure of plaintiff to pay over certain moneys claimed to be due defendant and assigned no other reason except the arbitrary refusal of its president to carry on the contract with plaintiff, and by reason thereof defendant is now estopped to set up any claim of breach, forfeiture, or otherwise."

The original contract as made by the parties and set up as an exhibit to the complaint is agreed upon, and there is no dispute as to its terms. It will be remembered that the plaintiff was appointed general agent for the defendant in the State of Oregon for the purpose of soliciting insurance upon policies to be issued by it. For his compensation, besides an annual

salary, he was to receive a percentage not only on the initial premiums paid on certain classes of policies, but also on subsequent renewal premiums. Among other things the contract provided as follows:

"It is agreed that all moneys, notes, or securities received or collected or at any time held by said party of the second part for or on behalf of, or belonging to said party of the first part, or to the possession of which said first party shall be entitled, shall be deemed to be held by him in a fiduciary capacity, and shall be used by him for no personal or other use whatever, but shall be by him immediately paid over to said party of the first part, unless specially otherwise authorized by the party of the first part; and it is especially agreed and stipulated between the parties hereto that in case said party of the second part shall withhold any such moneys, policies, receipts, notes, or securities, after demand therefor by said party of the first part, this contract may, at the option of the first party, be immediately terminated, but such termination shall not affect any claim of said party of the first part against said party of the second part, or constitute a waiver of the legal rights of the first party in the premises. Such demand may be made by letter sent to said second party at his last known postoffice address."

It may well be doubted whether the second affirmative defense is sufficiently traversed by the reply, for the reason that the pleading does not specify what is denied and what is admitted. It is true, the plaintiff

"denies each and every allegation therein contained except such thereof as are direct and unqualified admissions of the allegations contained in said amended and supplemental complaint."

1, 2. If the denials were more specific and pointed out what the pleader really denied and what he admitted, the court might draw a conclusion different

from that enunciated in the reply. The attempt to plead an estoppel is abortive because it does not state the facts upon which the pleader bases the plea, but merely refers to sources from which evidence might be adduced to support the plea if well made. For the reason that they forbid the party against whom they are invoked even to aver the truth, pleadings of estoppel are strictly construed. Moreover, the reason imputed to the defendant by the reply for terminating the contract, viz., "the failure of plaintiff to pay over certain moneys claimed to be due defendant," is of the very essence of the matter upon which the defendant bases its defense now under consideration. It is the exact ground upon which the defendant urges the forfeiture the plaintiff covenanted to incur if he entered the employment of another insurance concern while indebted to the defendant.

There is no dispute in the testimony that at the time of the breach charged against the defendant by the plaintiff he was indebted to the former in the sum of $4,739.34, and that this indebtedness continued up to and including the time of the trial, resulting in the judgment from which this appeal is taken. Moreover, the jury found in favor of the defendant in that sum of money, which they deducted from a larger sum which they found in favor of the plaintiff for alleged damages accruing to him. At the proper time, the defendant moved for a verdict in its favor on the plaintiff's alleged cause of action, and also in favor of the defendant for the amount of its counterclaim, but its motion was denied by the trial court. We do not here decide whether a breach of the contract by the defendant was shown, but for the sake

of argument concede that it had breached the contract prior to the commencement of this action.

3. The contention for the plaintiff is that the defendant, about May 18, 1921, refused to employ the plaintiff further or to comply with the terms of the contract, and upon this he counts as a breach. So far as mutual and dependent or concurrent covenants are concerned, the plaintiff would be entitled to rely upon such a breach of the agreement and sue for damages on account thereof; but that principle cannot apply to or overturn independent covenants. The plaintiff conceded, and the testimony is not controverted, that immediately upon the alleged breach, which he charged had occurred in May, 1921, he entered into the employment of the Canada Life Insurance Company, becoming its general agent in the State of Oregon. The indebtedness of the plaintiff to the defendant consisted of moneys in his hands which he had collected upon premiums due upon policies which the defendant had issued, all of which, after deducting the percentages due to the plaintiff, belonged to and was the property of the defendant. Inasmuch as this claim could have been discharged by the payment of a certain sum of money, it constituted a debt in favor of the defendant and against the plaintiff. It is said:

"In a purely technical sense, it (debt) is that for which an action of debt or *indebitatus assumpsit* will lie; a sum of money due by certain and express agreement, as by a bond for a determinate sum, a bill or note, a special bargain, or a rent reserved on a lease, where the quantity is fixed and specified, and does not depend upon any subsequent valuation to settle it, a sum of money due upon contract, express or implied. In a larger sense, the word means that which one person is bound to pay to another, or to perform for his benefit, a sum of money due from one person to

another, whether money, goods or services; due; all that is due under any form of obligation or promise; anything had or held of or from another, his property or right, his due; what one owes; an obligation founded on contract, express or implied, for the payment of money or other thing of value; a demand; any kind of just demand for the recovery of money; a claim; any just claim for the recovery of money; liability." 17 C. J. 1372.

As said by Mr. Chief Justice WALDO, in *Gilliam County* v. *Wasco County,* 14 Or. 525 (13 Pac. 324), speaking of the tax due from the county to the state:

"Although in strict technical language a tax is not a debt, yet in an enlarged sense, whenever there is a duty to pay on any ground, there is a debt."

In a similar case of *State* v. *Baker County,* 24 Or. 141 (33 Pac. 530), Mr. Justice ROBERT S. BEAN quoted with approval the language of Mr. Chief Justice STORY in *United States* v. *Lyman,* 1 Mason, 498 (Fed. Cas. No. 15,647):

"By the common law an action of debt is the general remedy for the recovery of all sums certain, whether the legal liability arises from contract, or be created by statute, and the remedy as well lies for the government itself as for a citizen; and where the debt arises by statute an action or information of debt is the appropriate remedy, unless a different remedy be prescribed by statute."

4. Without doubt or dispute, and according to the verdict of the jury, the plaintiff was indebted to the defendant during the whole course of these proceedings. We may concede that the obligation of the plaintiff to solicit insurance for the defendant and its obligation to pay him a salary and to allow him a certain percentage of premiums already collected and to be thereafter collected upon policies of insurance con-

stitute mutual and dependent covenants, so that if either party commits a breach of them it abrogated the contract so far as those particular covenants are concerned. On the other hand, the covenant made by the plaintiff that during the time he should be indebted to the defendant he would not enter the employment of any other company or person engaged in the life insurance business under penalty of forfeiting "all claims whatever accrued or to accrue hereunder," is a separate independent covenant made by him without reference to any corresponding or dependent one on the part of the defendant. It was entirely within his own volition whether he would comply with that covenant or suffer the penalty which he himself annexed to it.

"Whether breach discharges the adversary party from further performance, depends upon the relation, or want of relation, between the covenants entered into and broken by the party who breaks the contract, and the covenants entered into by the adversary party, for the discharge of which such breach is invoked. Stipulations or covenants entered into by the respective parties to the contract may be: (1) Independent of each other; or (2) mutually dependent, one upon the other. The question of whether covenants are dependent or independent, is a question of the intention of the parties as deduced from the terms of the contract. If the parties intend that performance by each of them is in no way conditioned upon performance by the other, the covenants are independent. If the parties intend performance by one to be conditioned upon performance by the other, the covenants are mutually dependent. Covenants which are mutually dependent may bear to each other one of two relations: (1) They may be the one precedent and the other subsequent; or (2) they may be concurrent. If the parties intend that a covenant by A is to be performed before a covenant by B is to be per-

formed, A's covenant is precedent, and B's is subsequent; the two being mutually dependent. If the parties intend that A is to perform the covenant on his part at the same time that B is to perform the covenant on his part, A's covenant and B's covenant are said to be concurrent." 5 Page on Contracts, § 2941.

"If a covenant which is to be performed by one of the parties to a contract, is to be performed at a given time or on the happening of a given event, and the covenant on the part of the adversary party is to be performed on the happening of a given event, and there is no necessary relation in time between the events or points of time at which such covenants are to be performed, such covenants are independent. In some jurisdictions, at least, the nature of the covenants of the contract as to their relation to one another seems to be determined by their relation when the contract is made and not to be affected by the stage of performance which has been reached when the question of the relation of such covenants arises; and, accordingly, the fact that in the actual course of performance, each party becomes bound to perform before either seeks to enforce performance of such covenant, does not prevent the covenant from being treated as independent." Idem, § 2972.

"If a contract which is made up of two or more covenants on each side has been broken as to one of such covenants only, the question of the effect of such breach upon the remaining covenants of such contract may turn in part on the question of the entire or severable character of the contract. Subject to the controlling principles, such as the relation of the covenants between themselves, and the relation of the covenant which has been broken to the contract taken as a whole, it may be said that no recovery can be had upon the covenants of an entire contract by a party who has broken a vital precedent or concurrent covenant. * *

"If, on the other hand, the contract is severable, it is in legal effect a number of distinct contracts; and a breach of one covenant does not operate as

a discharge of other covenants between the same parties. * * '' Idem, § 2996.

"The statement is frequently made that the party first in default under a bilateral contract cannot recover for the subsequent failure of the other party to perform.   Frequently a party first in default may recover the value of what he has done or given.   But so far as concerns an action on the contract the statement is true where the first default is material and there is dependency between the performances in question.   It is obviously not true of independent promises, and even in contracts where there is a general dependency a particular promise may be so far independent of a counter promise that breach of one will not excuse liability on the other."   2 Williston on Contracts, § 871.

It is said in *Fresno Canal & Irr. Co.* v. *Perrin,* 170 Cal. 411 (149 Pac. 805):

"Where the covenants of the respective parties are to be performed at different times they are held to be independent and the breach by one party of his covenant does not excuse the performance by the other of his covenant or relieve him of liability for damages for a breach thereof"—citing numerous authorities.

The subject is treated by Mr. Justice ROBERT S. BEAN in *Pacific Mill Co.* v. *Inman,* 46 Or. 352 (80 Pac 424), where he inculcates the rule of construction as follows:

"One of these is that where the contract contains several separate and independent covenants, not covering the whole ground of the contract, and it has been executed or performed in part by one of the parties, a covenant of his going only to a part of the consideration, a breach of which may be paid for in damages, will be regarded as independent, performance of the contract as divisible, and he may main-

tain an action for a breach thereof by the other party
without proving performance of such covenant.''

See, also, *Tenny* v. *Mulvaney,* 8 Or. 129, 137; *Love-
land* v. *Warner,* 103 Or. 638 (204 Pac. 622, 206 Pac.
298).

A case practically parallel with this is *Chicago Life
Ins. Co.* v. *Tiernan,* 263 Fed. 325, in which the opin-
ion was written by Judge SANBORN, far-famed for his
legal ability and clarity of opinion.   The principle
enunciated in the case is thus expressed in the sylla-
bus:

''Where an insurance agent's contract provided
that, if he were discharged before termination of
the contract without cause, he should be entitled to
commissions on renewals of the policies secured by
him, if he did not engage in business as agent for
another insurance company, the agent could not, after
his wrongful discharge, disregard the condition and
recover general damages for a breach of contract,
measured by the loss of profits he would have made
thereunder.

''Where a contract provided that an agent should
receive certain sums on his wrongful discharge by the
company on condition that he should not act as agent
for another company, the agent cannot recover dam-
ages for the breach, under the rule that the prior
breach by the company relieved him from perform-
ance of the condition.''

In the body of the opinion it is said:

''It is contended that the stipulations of the con-
tract were mutually executory and dependent, that
the plaintiffs first breached the contract by terminat-
ing it without cause, and that this breach estopped it
from enforcing the condition, on the ground that the
party who makes the first breach is estopped from
recovering or defending on the contract.   There
might, perhaps, have been force in such contention,

if this contract had not contained the condition. But it does contain it, and what counsel call a breach is the very termination without cause which the parties contemplated and stipulated the effect of when they made the contract, and that stipulation and the plaintiffs' election not to comply with the agreed condition of their claimed recovery forbid it. They may not have a recovery upon the part of the contract which is forbidden by the whole contract and the admitted facts. * *

"And the conclusion which argument, research, and meditation have forced upon the mind is that with which it was impressed on the first reading of this contract, that the parties to it intended to and did agree that, in case of a termination of the agency contract without cause attributable to the plaintiffs, they should receive on account of that termination the compensation resulting from the renewals specified in the contract, on condition that they did not enter into the life insurance business in their territory for any other company during five years after the termination, and that as they elected, doubtless wisely, not to comply with this condition, but to devote themselves to the insurance business for another company, they cannot recover in this action"—citing *Chase* v. *New York Life Ins. Co.*, 188 Mass. 271 (74 N. E. 325, 326); *Herrick* v. *New York Life Ins. Co.*, 202 Mass. 478 (88 N. E. 1092); *Barton* v. *Travelers' Ins. Co.*, 84 S. C. 209 (66 S. E. 118, 119, 120).

In that case likewise, the court rejected the claim of the plaintiff for general damages for being deprived of his share of the future premiums to be paid on policies which he negotiated as in the instant case, and gave judgment against the plaintiff for the amount that was owing to the defendant company.

5. The performance of the plaintiff's covenant not to engage in the employ of any other company while indebted to the defendant was clearly within his own power and did not depend upon and was not con-

trolled nor affected by any action or breach of the defendant company. If he chose to enter into the employment of the Canada Life Insurance Company, as it is stated by himself that he did while thus indebted, he must take the consequences which he himself appended to his covenant, viz., to forfeit all claims accruing or to accrue under the contract. The term "claim" is of very wide significance and includes any demand for damages such as the plaintiff here asserts. For instance, in *Clayton* v. *Dinwoodey,* 33 Utah, 251 (93 Pac. 723, 14 Ann. Cas. 926)', the defendant's testator had conveyed land to the plaintiff by a warranty deed covenanting against encumbrances. There were taxes on the land due and payable before the death of the testator. After the death his grantee was compelled to and did pay those taxes. In an action against the executor to recover the amount paid the question was whether this was a "claim" requiring presentation to the executor, and the court said: "Plaintiff's claim arose from a breach of a covenant in a deed. It is a claim arising on contract." *United States* v. *Milliken Imprinting Co.,* 202 U. S. 168 (50 L. Ed. 980, 26 Sup. Ct. Rep. 572), was a case where the company sued to correct a mistake in a printing contract and to recover damages for a breach thereof by the government. The Supreme Court of the United States held the chose in action to be within the statute giving to the Court of Claims jurisdiction of "all claims founded upon any contract expressed or implied * * or for damages liquidated or unliquidated, in cases not sounding in tort," etc. Mr. Justice HOLMES said:

"A claim for money upon a contract * * seems to us to fall within these words in their obvious literal sense."

6, 7. The deduction is that the plaintiff's present assertion of damages is a ".claim" accruing under the contract. This must be so for without the contract he would have no cause of action of any kind. What he asserts here is the very thing he agreed to forfeit if he entered the service of another insurance company, as he did while yet indebted to the defendant as he was. The effect of his covenant is to require us to hold that he cannot "be off with the old love and on with the new" while he is yet indebted to the company.

It is the plain language of his own covenant which must be enforced against him, with the conclusion that there was no ground for any verdict in his favor. The testimony is uniform and it was so found by the verdict that he was indebted to the company in the sum mentioned. Neither is there any dispute in the testimony but that he entered the service of a rival insurance company while thus indebted. In the voluminous record there are many other assignments of error, but it is unnecessary to consider them because the one discussed is conclusive of the case. The result is that the judgment of the Circuit Court is reversed and the cause is remanded, with directions to enter a judgment against the plaintiff and in favor of the defendant on the verdict for $4,739.34, together with the costs and disbursements of this action.

REVERSED AND REMANDED.   COSTS TAXED.   RE-HEARING DENIED.

McBride, C. J., and Rand, Coshow and Belt, JJ., concur.

BEAN, J., Concurring in Part, Dissenting in Part.— The plaintiff should have judgment for the sum of $14,859.21.

Brown, J., dissents.