City of St. Louis, Appellant, v. Emily Worthington, Executrix of the Estate of James A. Worthington.—52 S. W. (2d) 1003.

Division One, September 8, 1932.

*Julius T. Muench, G. Wm. Senn* and *Harry H. Richards* for appellant.

184

*Lubke & Lubke* for respondent.

FERGUSON, C.—This is a condemnation proceeding instituted in the Circuit Court of St. Louis County by the city of St. Louis against James A. Worthington, now deceased, for the purpose of acquiring title to a tract of land containing 105.75 acres, owned by Worthington and situate in St. Louis County. It was necessary for the city to acquire this property in carrying out its plans for the extension of Koch Hospital, a public hospital owned and maintained by the city. The entire tract was taken and as Worthington owned no adjoining land the value of the land taken constituted the measure of the damages to be assessed. The commissioners appointed by the court (Sec. 1342, R. S. 1929) "to assess the damages" which the owner would "sustain by reason of such appropriation" made and filed their report in which they appraised the value of the land, without improvements, at $300 per acre, or a total of $31,725, and appraised the value of the improvements thereon separately at $13,-500, making a total award of $45,225. Defendant filed exceptions to

the report of the commissioners and demanded a trial by jury, which was granted. The jury returned a verdict awarding damages in the sum of $85,000. We are informed by the statement, found in the briefs, giving the history of this case that "after hearing plaintiff's motion for a new trial the trial court entered an order that unless defendant would remit $20,000 of the verdict a new trial would be granted. The defendant declining" to make the *remittitur* a new trial was ordered on the ground "that the verdict was excessive and against the weight of the evidence as to amount" and the defendant appealed. This court affirmed the order granting a new trial and remanded the cause. [City of St. Louis v. Worthington (Mo.), 19 S. W. (2d) 1066.] Upon the retrial of the cause the verdict of the jury assessed damages in the sum of $68,000 and from the judgment entered thereon plaintiff brings this appeal.

Appellant makes two assignments of error: (1) that the trial court permitted defendant to show that two of plaintiff's witnesses had served as commissioners and admitted evidence upon the cross-examination of these two witnesses "which advised the jury of the amount awarded by the commissioners;" (2) the refusal of plaintiff's request that the jury, under supervision of the court, be permitted to visit and view the land. The commissioners' report, signed by all the commissioners, had assessed the value of the land, without improvements, at $300 per acre. The appellant, City of St. Louis, used two of the commissioners, Dr. S. J. Will and Fred L. Kerth, as witnesses and its first assignment of error relates to the cross-examination of these two witnesses.

On direct examination Dr. S. J. Will testified that he had lived in the vicinity of the land for fifty years, had "owned property" and "watched the trend of values" in that section, was "familiar with the tract" of land taken and valued it "at $210 an acre as of April 2, 1923," the date of the appropriation by plaintiff.

"Cross-examination:

"Q. Did you always have the same idea, that that was worth $210 an acre? A. Well, yes.

"Q. You did? A. Yes.

"Q. Dr. Will, you were appointed by this court as one of the commissioners— A. Yes, sir.

"Q. —to assess the value of this property, were you not? A. Yes, sir.

"Q. And you qualified and functioned as such? A. Yes, sir.

"Q. And you signed a report that was filed in this court, didn't you? A. Yes, sir.

"Q. And did you at that time fix the value—

"THE COURT: Wait a minute.

"MR. RICHARDS (counsel for plaintiff): I object to going into that.

186

"THE COURT: You are not going to say that amount, are you?

"MR. McATEE (counsel for defendant): Sir?

"THE COURT: You are not going to ask with reference to that amount?

"MR. McATEE: Certainly I have a right to impeach the witness, in order to test his memory and credibility.

"THE COURT (addressing counsel for plaintiff): Are you going to object to it?

"MR. RICHARDS: I am going to object to it. I am putting Doctor Will on the stand as an expert and not as a commissioner in this case because of his long life down there in this section of the county.

"MR. McATEE: Yes, your Honor, and I have a right to cross-examine him as an expert.

"THE COURT: Do you want to show the report of the Commissioners?

"MR. McATEE: Do I want to show it? No.

"THE COURT: I mean, do you want to refer to the amount?

"MR. McATEE: I want to refer to the amount that he gave as his idea of the property.

"MR. RICHARDS: I object to that, if your Honor please.

"MR. McATEE: I think it is perfectly proper.

"THE COURT: The court will sustain the objection.

"MR. McATEE: Q. Now, doctor, I will ask you again: did you ever have any other idea as to the value of this land? A. Yes, I did.

"Q. You did; and when was that? A. That was in April, about '23.

"Q. April, 1923; what, in your opinion, was the value of the land at that time— A. Yes.

"Q. —what was your opinion at that time? A. It was at that time, yes.

"Q. Yes? A. About 210 an acre.

"Q. Did you ever have an idea at that time it was worth $300 an acre? A. Well, I don't think so.

"Q. How? A. I don't think so.

"Q. You didn't at that time believe the property was worth $300 an acre? A. No, sir. That was the agreement that—

"THE COURT: Wait a minute.

"MR. RICHARDS: I object to that testimony, your Honor.

"THE COURT: The objection is sustained.

"MR. McATEE: Q. Doctor, I want to show you here a paper that I will refer to as the Report of Commissioners, and ask you if that is your signature there (hands paper to witness, which he examines)? A. Yes.

"Q. I will ask you to refer to that for the purpose of refreshing you memory, and then I will repeat the question, if at that time you

had any other idea of the value of this land than what you are now testifying to?

"MR. RICHARDS: If your Honor, please, may I just offer one suggestion? His idea of the value at that time—the doctor has already testified to his idea of the value—

"MR. MCATEE: I am cross-examining him.

"MR. RICHARDS: —on direct examination, and also on cross-examination, he has testified to his idea of the value.

"MR. MCATEE: I am cross-examining him on that, your Honor. I am not bound by his answer. I am cross-examining him as I understand the law—

"THE COURT: Well, as the Court understands the law, this trial jury has absolutely no right to know what the report of the Commissioners was, either directly or by inference. The Court will sustain the objection as to any evidence with reference to the contents of the report of the Commissioners.

"MR. MCATEE: I am not asking that. Will you read the question?

"MR. RICHARDS: May I see what that report is, your Honor?

"THE COURT: Yes, (Mr. Richards receives paper from the witness.)

"MR. MCATEE: Will you read the question?

" 'Q. (repeated by official reporter) I will ask you to refer to that for the purpose of refreshing your memory, and then I will repeat the question: If at that time you had any other idea of the value of this land than what you are now testifying to?'

"MR. RICHARDS: I object to the doctor having any reference to the Commissioners' Report whatever, your Honor.

"MR. MCATEE: I am not asking that.

"MR. RICHARDS: That is what that question is, your Honor.

"THE COURT: The Court will overrule the objection. He may search his mind as to his ideas of the value of this property. The objection will be overruled. He asked you, doctor, if you had any other ideas, you personally, as to the value of this property.

"To which action and ruling of the court the plaintiff, by its counsel, then and there duly excepted at the time and still excepts.

"A. Sure I did.

"MR. MCATEE: Q. What was it? A. Well, my idea was it was worth $210 an acre.

"Q. At that time? A. Yes.

"Q. Did you make an affidavit at that time, that it was worth $300 an acre? A. As a Commissioner, yes—

"MR. RICHARDS: Wait a minute—

"THE COURT: Now, wait a minute, Mr. McAtee. The Courts are very decided about this proposition; it is absolutely improper to

188

bring before the jury anything about the report of the Commissioners, and the Court will discharge the jury if you persist in it."

At this juncture the court excused the jury, instructing them to remain outside of the courtroom, and a conference between the court and counsel was had after which, out of the presence and hearing of the jury, defendant's counsel made this offer of proof:

"MR. MCATEE: The defendant in this case offers to show that the witness S. J. Will at one time, to-wit, in 1923, made an affidavit that the value of this property was $300 an acre.

"THE COURT: Is that the commissioners' report to which you refer?

"MR. MCATEE: I haven't done that.

"THE COURT: Well, I am asking you now if your offer of proof is the commissioners' report?

"MR. MCATEE: Well, in my offer of proof, if he denies it, I shall hand him a paper containing his signature, I shall not refer to it as the report of the commissioners, and will simply ask him to answer 'yes' or 'no,' without any other explanation to the question.

"THE COURT: What is your position in the matter, Mr. Richards?

"MR. RICHARDS: I don't think the jury has any right to know about this award, and I don't see how Mr. McAtee is going to keep it away from them, is my opinion. If he can do it, all right.

"THE COURT: The Court will permit you to interrogate the witness as to any affidavit he may have made, but will not permit the report of the commissioners to be shown to the jury or introduced in evidence."

The jury being recalled the cross-examination then proceeded:

"MR. MCATEE: Q. Doctor, I will ask you this question, and ask you to answer it simply 'yes' or 'no:' Did you heretofore, at any time, make an affidavit that this property was worth $300 an acre? Just answer that 'yes' or 'no.' A. Yes; I did.

"Q. All right; that is all.

"Redirect examination, by Mr. Richards.

"Q. Doctor, just one more question. What is your opinion of the value of this property in question as of April 2nd, 1923:

"MR. MCATEE: Well, now, your Honor, that is repetition and we object to it.

"MR. RICHARDS: Not at all. I am asking this question again in view of the fact that this affidavit matter was brought in.

"Q. What is your opinion as to the value of that property—

"THE COURT: Well, the Court will let you ask it.

"Q. —in April, 1923? April 2nd, 1923? A. Forty-five thousand.

"Q. I am talking about the value—

"MR. MCATEE: He has answered the question, if the Court please. I submit he has answered the question.

"THE COURT: He has answered the question.

"MR. RICHARDS: All right; that is all.

"MR. McATEE: That is all, doctor."

Fred L. Kerth testified on his direct examination that he was a resident of St. Louis County, had served as a member of the county court, county collector and deputy assessor; that he "lived for eighteen years about three and a half or four miles from this property" and that in his opinion the value of this tract of land as of April 2, 1923, "was $210 an acre with the improvements."

"Cross-examination, by Mr. McAtee:

"Q. Now, Judge, you testified in this case before, didn't you? A. Yes, sir.

"Q. Do you recall testifying in this case before that this land was worth about $427 an acre with the improvements? A. I did. That is, in this way, Mr. McAtee, that is the commissioners' report.

"Q. Now, I am not asking you anything about that— A. Well, now this is a different—

"THE COURT: Don't state the commissioners' report.

"THE WITNESS: Sir?

"THE COURT: Don't state the contents of the commissioners' report.

"Q. And you also stated that you valued that land at $300 an acre and the improvements at $13,500? A. Yes, sir; that is true.

"Redirect-examination, by Mr. Richards.

"Q. Now, Judge, will you kindly tell this jury again what is your honest opinion as to the value of that ground down there under discussion, the Worthington tract, as of April 2, 1923?

"MR. RICHARDS: Q. What is your opinion of that value—

"MR. McATEE: We object to that on the ground it is repetition. He has gone over that before, and I closed the cross-examination.

"MR. RICHARDS: Well, he brings this matter up time and time again of an affidavit, and I have a right to ask him his opinion.

"MR. McATEE: I am not asking him about an affidavit. I simply asked him as to his former testimony.

"THE COURT: Well, you may ask the question.

"MR. RICHARDS: Q. What is your opinion as to that Koch extension site, the old Worthington tract, as of April 2, 1923? A. Well now, there is a question, gentlemen, that I don't know how to answer because—

"Q. What is your opinion as to that value? A. The actual value — A. At that time?

"Q. —of this property as of April 2, 1923? Your opinion? A. Two hundred ten dollars an acre.

"Q. Does that include the improvements, Judge? A. It includes the improvements; yes, sir."

In support of its first contention appellant cites School Dist. of Kansas City v. Phoenix Land & Imp. Co., 297 Mo. 332, 249 S. W. 51; City of Cape Girardeau v. Hunze, 314 Mo. 438, 284 S. W. 471; City of St. Louis v. Smith, 325 Mo. 471, 30 S. W. (2d) 729; City of St. Louis v. Schopp, 325 Mo. 480, 30 S. W. (2d) 733; and Kansas City So. Ry. Co. v. Second Street Impr. Co., 256 Mo. 386, 166 S. W. 296. In the case of School. District v. Phoenix Land & Imp. Co. counsel for condemnor was permitted, over defendant's objections, to refer in his opening statement to the jury to the appointment of commissioners by the court naming a Mr. McElroy, who was subsequently offered by plaintiff as a witness in the. case, as one of the commissioners, and to state that "this defendant corporation which owned the land was not satisfied" and "filed exceptions to the report and asked for a jury trial on the question of damages." McElroy as a witness for plaintiff, over defendant's objections, was permitted to state that he had served as one of the commissioners appointed by the court, naming his associate commissioners, and to relate "at length what he and the other commissioners did and learned while performing said service" and "that the three commissioners agreed" on the valuation of the property to be taken. He was then asked by counsel for condemnor to give his opinion "as to the value of that property." The answer was "$41,950." Counsel then asked "I think you said you and your co-commissioners agreed." Upon suggestion of the court the last question was withdrawn. This court said: "Mr. McElroy was a competent witness in this case, but the fact that he was one of the commissioners who had assessed the damages sustained by defendant should not have been permitted, either directly or indirectly, to go to the jury. When the court awarded defendant a trial by jury as to damages sustained by it, the report of the commissioners became *functus officio*, and the cause then stood as though no commissioners had ever been appointed. (Cases cited) . . . Keeping in mind the opening statement of plaintiff's counsel heretofore quoted, a part of which was objected to at the time, we are decidedly of the opinion that the testimony of Mr. McElroy complained of was not only prejudicial to the rights of defendant, but was admitted in disregard of the principles of law enunciated in the cases heretofore cited." In City of St. Louis v. Smith, supra, the holding in School Dist. v. Phoenix Co., that while a commissioner is a competent witness the fact that he was "a commissioner who assessed the damages should not be permitted to go to the jury" is pronounced "satisfactory" and it is pointed out that the ruling in the School District case is approved in City of Cape Girardeau v. Hunze, supra. It is said in City of St. Louis v. Schopp: "A. Commissioner is competent to testify at a hearing upon exceptions to his report if he makes no reference to the report or to the award therein made but

simply states from his knowledge in the premises, what, in his opinion, the damages will be." In the Schopp case one of the commissioners was called as a witness for the condemnor, the city of St. Louis, and, over defendant's objections, was permitted to testify to the amount of the award made by the commissioners and that in his opinion it was "a correct award on the value of the property." The court held that the amount of an award and the reasons of the commissioners for making same were not admissible in evidence and that by such testimony "unauthorized facts upon which to base a finding for damages" were admitted into evidence. Kansas City So. Ry. Co. v. Second Street Impr. Co., supra, quotes with approval from Mo. Pac. Ry. Co. v. Roberts, 187 Mo. 309, 321, 86 S. W. 91, 95, as follows: "The jury have no more right to know what the report or assessment of damages of the commissioners was, than any jury in any case has to know what the verdict of a previous jury was in the same case. 2 Lewis on Eminent Domain (2 Ed.) section 449, states the law as follows: 'On appeal from the commissioners and trial *de novo* the report appealed from is no evidence as to the amount of damages.'"

■ ■ Appellant complains that in the cross-examination of its witnesses Will and Kerth, which we have above set out, the defendant was permitted, by the trial court, in contravention of the rules enunciated in the foregoing cases, to improperly get before the jury the fact that these witnesses had served as commissioners and indirectly that the commissioners' report, which they had signed and sworn to, appraised the value of the land at $300 per acre without improvements. As commissioners these witnesses had signed, adopted and sworn to the report which appraised the value of the land at $300 an acre without improvements but as witnesses for the plaintiff in the trial of this case each on direct examination placed the value of the land with improvements, as of the same date to which their report as commissioners related, at $210 per acre. Assuming, without so holding, that even upon cross-examination for the purpose of impeachment, to test the credibility of the witness and as affecting the weight and value of the opinion expressed on direct examination, it was not permissible for the defendant to inquire of the witness whether he had served as a commissioner and had signed the commissioners' report appraising the land, as of the same date, at a higher valuation than he was then, as a witness, placing upon it, yet when we revert to the cross-examination of the witness Kerth it appears that at no time did counsel for defendant inquire whether Kerth had been a commissioner or refer to the commissioners' report. The inquiries related to the valuation placed upon the land by the witness in his testimony at the former trial. Further the plaintiff did not make a single objection in the course of the cross-examination of this wit-

ness and therefore neither the propriety of the cross-examination nor the competency of the testimony elicited thereby can be reviewed here. Evidence admitted without objection cannot be complained of on appeal. Recurring to the cross-examination of plaintiff's witness Will, it will be noted that plaintiff, by not making any objection thereto, permitted the defendant to inquire and develop the fact that the witness had served as a commissioner, but now, as appellant, plaintiff says the admission of that testimony was error. Objections to evidence cannot be raised for the first time on appeal and made the basis for a claim of error. Appellant further complains of the admission of testimony, in the subsequent course of the cross-examination, tending to show that as one of the commissioners the witness had adopted, signed and sworn to a written report whereby he placed the valuation of the land, as of the same date to which his direct examination related, at $300 per acre without improvements which was inconsistent with his testimony given on direct examination fixing the valuation of the land at $210 with improvements. Appellant asserts that the cross-examination pursued by defendant was improper and that the testimony elicited thereby should have been excluded. Respondent (defendant) does not undertake to sustain the propriety of the cross-examination but replies that plaintiff did not make or preserve timely or proper objections and exceptions to the cross-examination and that the very testimony of which plaintiff, as appellant, is now complaining was admitted either without any objection or without proper or timely objection having been made, by plaintiff, thereto. Assuming that plaintiff did properly make and preserve its objections and exceptions so as to make the propriety of that portion of the cross-examination reviewable, we are of the opinion that the inquiry made by defendant, on cross-examination, concerning the making, by the witness, of a prior written statement inconsistent with his testimony on direct examination was legitimate and proper cross-examination and that the rulings of the court restricting the cross-examination, in that respect, were favorable to plaintiff. While it is not proper to offer the report of the commissioners in evidence, and the same should not be referred to or considered on the trial *de novo* before a jury, as a basis either of comparison or for estimating damages, nevertheless we think the rules governing cross-examination generally would apply to the cross-examination of a commissioner who is called, by either party, as a witness on the question of damages, permitting the other party upon cross-examination to inquire, as affecting the credibility of the witness and the weight of his testimony, whether the witness had made, adopted and sworn to a prior written statement, as the report of the commissioners, inconsistent with his testimony on direct examination. A witness may be interrogated, on cross-examination, as to whether he has made

certain statements inconsistent with, or contradictory to, his testimony in chief since such questions tend directly to impeach the witness if answered in the affirmative and are proper for the purpose of laying a foundation for impeachment if he denies making such statements. Upon cross-examination the witness may be asked any questions which tend to impeach, rebut, contradict or modify his testimony on direct examination. After a witness has been cross-examined, the party calling him may by redirect examination afford the witness opportunity to make full explanation of the matters made the subject of cross-examination so as to rebut the discrediting effect of his testimony on cross-examination and correct any wrong impression which may have been created. ■ "Evidence which is admissible for any purpose cannot be excluded simply because it is inadmissible for other purposes. . . . . Where the evidence is competent for any purpose, it is the duty of the court to admit it when offered, and if it is desired to have it limited in its effect then it is the duty of the opposite party to ask an instruction for that purpose." [Sotebier v. St. Louis Transit Co., 203 Mo. 702, 721, 102 S. W. 651.] "The rule is well settled that evidence which is competent for any purpose may not be excluded on the ground that it is incompetent for other purposes. . . . It is also equally well settled that, when evidence, competent for one specific purpose, is admitted, the court, if requested so to do, should limit the effect of such evidence to the purpose for which it is competent." [Courter v. Chase & Son Merc. Co. (Mo. App.), 299 S. W. 622.] "Whenever a question is made upon the admission of evidence it is indispensable to consider the object" and purpose for which it is offered "and the point intended to be established by it. . . . It frequently happens that an item of proof is plainly relevant and proper for one purpose, while wholly inadmissible for another, which it would naturally tend to establish. And when this occurs, the evidence when offered for the legal purpose can no more be excluded on the ground of its aptitude to show the unauthorized fact, than its admission to prove such unauthorized fact can be justified on the ground of its aptness to prove another fact legally provable." [People v. Doyle, 21 Mich. 221.] It often happens that testimony which is "inadmissible for one purpose is admissible for other purposes" and when such testimony "is offered for one purpose and becomes admissible by satisfying all the rules applicable to it in that capacity" it cannot be excluded because it is inadmissible under the rules applicable to it in some other capacity and the "jury might improperly consider it in the latter capacity." Under such circumstances the only question is, what are the proper means "for avoiding the risk of misusing the evidence? It is uniformly conceded that the instruction of the court suffices for that purpose; and the better opinion is that the opponent of the evi-

dence must ask for that instruction; otherwise he may be supposed to have waived it as unnecessary for his protection.'' [Wigmore on Evidence (2 Ed.) sec. 13.] In applying the foregoing rules, relative to cross-examination and the admissibility of evidence, we conclude, that while reference could not be had to the commissioners' report as substantive evidence bearing on the issue of damages it was not improper to refer to the report, upon cross-examination, for the purpose of impeachment and to discredit the testimony of the commissioner who as a witness for plaintiff gave testimony on his direct examination as to values inconsistent with the valuation fixed by the written report which he had adopted, signed and sworn to. The opportunity was then open to plaintiff, had it desired to do so, to re-examine the witness for the purpose of explaining the matters thus brought out on cross-examination and plaintiff was further entitled, had it so requested, which it did not, to an instruction limiting the consideration and effect of such evidence to the sole purpose for which it was competent.

While the plaintiff's evidence was being presented the following incident occurred which is the basis of appellant's second and only other assignment of error.

''MR. RICHARDS (counsel for plaintiff)': I want to make the request to the Court and also to opposing counsel, we would like for the jury to see this property, either under the Court, directly under the Court, or some official appointed by the Court; and tomorrow morning I shall have here—

''THE COURT: Well, never mind.

''MR. McATEE (counsel for defendant): I think that request is highly improper, and I think counsel should be reprimanded for making that request—

''THE COURT: Yes—

''MR. McATEE: —and I ask that the Court do so.

''THE COURT: It is an improper suggestion. There is no place in this trial for the request to be made, and the request should not be made.

''MR. RICHARDS: I beg your pardon, your Honor. I thought it was, and I am going to except to the ruling on it.

''THE COURT: Well, the request is denied.

''MR. RICHARDS: We have evidence before the Court from a number of witnesses—

''THE COURT:· Well, you have argued it far enough. Don't argue it any further. You may take your exception to it. It is improper for the jury to see the premises. The jury will try the case under the evidence and the instructions of the court.·

''To which action and ruling of the Court the plaintiff, by its counsel, then and there duly excepted at the time and still excepts.''

Appellant charges error in the refusal of the trial court to direct a view of the property by the jury. A view is not a matter of right but rests in the sound discretion of the trial judge as to whether it is proper or necessary to enable the jury to obtain a clearer understanding of the issues involved or to make a proper application of the evidence. "It is only when there has been a flagrant abuse of this discretionary power that this court will interfere." [Young v. Pa. Fire Ins. Co., 269 Mo. 1, 20, 187 S. W. 856, 861; Very v. Willi (Mo. App.), 293 S. W. 500; Coyne v. Golland (Mo. App.), 243 S. W. 376; Gunn v. Hemphill Lbr. Co. (Mo. App.), 218 S. W. 978; Ellis v. Railroad Co., 131 Mo. App. 395, 111 S. W. 839.]

The witnesses on both sides, as a basis for their opinions as to value and upon cross-examination fully described the location of the tract of land in question, its topography, characteristics and adaptability to industrial and commercial purposes and the nature and extent of the improvements on the land as of April 2, 1923, the date of its appropriation by the condemnor. This trial was begun on March 27, 1930, approximately seven years later. It appears from the evidence that in the meantime material changes and alterations had occurred. Some of the original improvements had been removed, clearing had been done, certain fills made and new buildings erected by the city. A view at the time of the trial would likely have required further evidence to differentiate between the conditions existing at the time of the view and those existing at the time of the appropriation of the property by the city. It does not appear that a view was either proper or necessary or would have been helpful to an understanding and application by the jury of the evidence adduced and we certainly cannot say as a matter of law that the trial court abused its discretion in refusing to order a view of the premises.

In connection with the refusal to order a view appellant charges that the statement by the trial court, when plaintiff's counsel made the request—that "It is an improper suggestion. There is no place in this trial for the request to be made and the request should not be made,"—created a "bias and prejudice against the plaintiff" in the minds of the jurors and so operated as to deny plaintiff a "fair and impartial trial." Either party in good faith believing that a view of the premises in question is necessary to an understanding and application by the jury of the testimony may properly request the court to order a view. Such request, as we have stated, is addressed to the sound discretion of the court. The adverse party, however, may, also in good faith, be of the opinion that instead of contributing to a clearer understanding by the jury of the evidence adduced, a view would tend rather to confusion and perhaps to the substitution of a juror's individual opinion formed from his observation for an opinion based upon the testimony of the witnesses;

196

or that a change in conditions makes a view inadvisable. When a demand for a view is made, as in this case, to the court and opposing counsel in the presence and hearing of the jury, if counsel for the other party does not acquiesce but opposes the request the situation thus presented to the jury may result in an impression which is unfair and unfavorable to the opposing party. It is possible for such a demand made, with some embellishments, in the hearing of the jury to be utilized to the advantage of one party and to the disadvantage of the other. A view not being a matter of right we think the proprieties and better practice require that the request to the court be made out of the hearing of the jury. It may be that the court alluded to the manner and circumstances under which the request in this case was made in saying, ''it is an improper suggestion'' and the '' request should not be made.'' The statement, ''there is no place in this trial for the request to be made'' amounts to no more than a ruling by the court, in the exercise of the discretion vested in it, that a view was neither necessary nor proper. But if it be considered that the statements ''it is an improper suggestion'' and ''the request should not be made'' were unjustified and improper strictures upon plaintiff's counsel, yet upon examination of the whole record we are not prepared to say that any perceptible injury was suffered by plaintiff or that plaintiff's substantial rights were impaired on account of this one incident in the course of a long trial, and to hold that it was so prejudicial to plaintiff's case as to warrant this court in reversing the judgment. Each side called numerous witnesses on the one question of damages and defendant's evidence would have supported a verdict for a much larger amount than that allowed. A reading of the entire record shows the trial as a whole to have been fairly conducted; that the trial court maintained an attitude of neutrality and impartiality as to the issue involved, at no time by any remark or comment intimating its views or opinion upon the evidence or the merits; and that the case was submitted to the jury upon instructions concededly fair and proper, as no criticism thereof is made. No reversible error appearing, the judgment is affirmed. *Sturgis* and *Hyde, CC.*, concur.

PER CURIAM:—The foregoing opinion by Ferguson, C., is adopted as the opinion of the court. All of the judges concur.