**COLORADO INTERSTATE GAS COMPANY,**
a Corporation, Appellant (Plaintiff
and Petitioner below),

v.

**UINTA DEVELOPMENT COMPANY,** a
Corporation, Appellee (Defendant
and Respondent below).

No. 2983.

Supreme Court of Wyoming.

Sept. 5, 1961.

W. A. Muir, Greeley, Colo., and John U. Loomis, of Loomis, Lazear & Wilson, Cheyenne, for appellant.

William S. Edmonds, Kemmerer, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Pursuant to the provisions of § 3–6203, W.C.S.1945 (now § 1–793, W.S.1957), Colorado Interstate Gas Company as plaintiff filed its petition in the district court of Sweetwater County on April 20, 1956, reciting the necessary facts for condemnation of a pipeline right of way over certain lands belonging to the defendant, Uinta Development Company, and praying for authorization to proceed with such condemnation.

The statute relied upon provides that certain companies, including pipeline companies, may condemn rights of way by presenting a petition to the district judge, with certain information and a prayer for the appointment of appraisers. The judge then appoints three appraisers who are required to hear the proofs and allegations of the parties. Any two of them, after reviewing the premises, are to ascertain and certify the compensation proper to be made for the lands taken as well as all damages accruing in consequence of the condemnation. No provision for appeal from or exception to their award, nor for a trial by jury, is contained in this statute.

The district judge, after notice to the defendant as provided for by the foregoing section, appointed appraisers, who in their "Certificate, Report and Appraisement" certified the compensation for the taking and the injuriously affecting the land to be $2,297.47, and in another portion of the same instrument stated that the right of way would be 1,021.10 rods in length and appraised "the value thereof at $2.25 per rod."

Considering the assessment excessive, the plaintiff filed written exceptions to the award with an application for review by the court and a demand for trial by jury. The statutory jury fee of $12 was paid at the time of such demand. The defendant then moved to dismiss plaintiff's appeal and asked that the demand for trial by jury be refused and denied. This motion was made on the grounds that no provision for an appeal or trial by jury had been made in the statute involved. Following a consideration of the matter on briefs of counsel, the trial judge entered an order in which the demand of plaintiff for a trial by jury was denied. No specific ruling on the motion to dismiss plaintiff's appeal appears in the record. A hearing before the court was had after the parties stipulated in writing "that at the hearing in the district court on appeal, plaintiff and defendant shall be permitted to introduce evidence on the merits of the case."

According to the judgment entered, the trial court found from the evidence that the report of the appraisers should be confirmed and that the ascertainment of compensation by said appraisers was made according to law. The judgment then recited that the court further finds and ascertains that the compensation, to be paid by plaintiff to defendant for the condemnation, use, damage and easement, for the property taken, and for damages to the lands of defendant not taken, is the sum of $2,297.47. It was ordered that defendant should have and recover that amount of the plaintiff, with interest. On appeal the plaintiff complains that its demand for trial by jury should not have been denied and that the award was excessive, unreasonable and unjust.

As we have already stated above, the statute followed in this case contains no provision either for exceptions to the award or for a trial by jury. Concerning the absence of a provision for exceptions to the award, the inherent and constitutional powers of the courts are such that they have a right of review in all proceedings of this nature. Irrespective of statutory authority therefor, it has been generally held that the court to which the report is submitted has power to review said report and to entertain exceptions thereto. United States v. Hess, 8 Cir., 70 F.2d 142, 8 Cir., 71 F.2d 78, 80; City of St. Louis

v. Worthington, Mo., 19 S.W.2d 1066, 1067, Id., 331 Mo. 182, 52 S.W.2d 1003; Jewell v. Wisconsin-Minnesota Light & Power Co., 181 Wis. 56, 194 N.W. 31, 32. See also State v. Anderson, 92 Mont. 313, 13 P.2d 228, 230.

There is, however, a distinction between the inherent right of courts to review decisions of lesser tribunals, to ascertain the regularity of their proceedings, and the right to entertain an appeal which ordinarily can exist only by virtue of statute. In Edwards v. City of Cheyenne, 19 Wyo. 110, 114 P. 677, 686, Id., 122 P. 900, it was said:

"* * * The statute of 1888 [pertaining to railroads] provides expressly for exceptions to the award. Although section 3084 [R.S. of Wyoming 1899] is silent in that regard, we entertain no doubt that such exceptions are permissible in a proceeding thereunder, and that thereon the award and certificate of the appraisers may be reviewed by the court, and that the same may be vacated if the exceptions are sustained. * * *"

■ Turning then to a consideration of the power of the court to modify or change the award of the appraisers, it is sufficient to say that we have very recently dealt with this subject in an opinion written by Chief Justice Blume in State Highway Commission v. System Investment Corporation, Wyo., 361 P.2d 528, 534–535. In that opinion Justice Blume pointed out that textwriters and other writers seem to be agreed that the trial judge has no power to increase or decrease the award of the appraisers except by express statutory authority. It is not necessary to review the authorities cited by the learned Chief Justice on that point.

Although in the State Highway case the court was influenced to some extent in its decision by the implications of the statute there involved, most of the authorities relied upon had to do with situations where, as in the case at bar, there was an absence of controlling statutory provisions. We

think the same holding should be applied in the instant case and that we should follow the rule that in the absence of statutory authority the court's power is limited to the right to confirm, set aside or remit the report of appraisers. See State ex rel. Weltmer v. Taylor, 42 N.M. 405, 79 P.2d 937, 940; City of St. Louis v. Rossi, 333 Mo. 1092, 64 S.W.2d 600, 602–603; 18 Am. Jur., Eminent Domain, § 366, p. 1008 (1938); Jahr, Eminent Domain, p. 402 (1953); 29 C.J.S. Eminent Domain § 313, p. 1346. In such situations only questions of law are open for consideration and determination by the district judge, i. e., whether the award was substantiated by the evidence and was fairly, impartially, and regularly made. National Labor Relations Board v. Lion Shoe Co., 1 Cir., 97 F.2d 448, 452; E. Anthony & Sons v. National Labor Relations Board, 82 U.S.App.D.C. 249, 163 F.2d 22, 24, certiorari denied 332 U.S. 773, 68 S.Ct. 89, 92 L.Ed. 358; 73 C.J. S. Public Administrative Bodies and Procedure § 228, p. 599. With certain limited exceptions, which are not here applicable, questions of law must be tried by the court. Rule 38(a), Wyoming Rules of Civil Procedure.

■ It is well settled that there is no constitutional right to a trial by jury in condemnation cases, and in the absence of a special constitutional or statutory provision such a right does not exist. Edwards v. City of Cheyenne, supra, at page 114 P. 687; Bauman v. Ross, 167 U.S. 548, 17 S.Ct. 966, 983, 42 L.Ed. 270; City and County of Honolulu v. United States, 9 Cir., 188 F.2d 459, 461, 462, certiorari denied 342 U.S. 849, 72 S.Ct. 77, 96 L.Ed. 641. It is notable that special statutory provisions for a trial by jury have been made in most condemnation procedures adopted by the legislature in Wyoming, but the procedure adopted for pipeline companies and other companies referred to in the same statute remains an exception to the general rule. Certainly there is no valid reason why a jury trial should be allowed in one instance and not in another, but we cannot by judicial interpretation accomplish

what the legislature has failed to do. It must therefore be held that a trial by jury has not been provided for in the kind of condemnation proceeding which is involved in the case at bar.

We pass then to the propriety of the judgment in the light of plaintiff's argument that it is contrary to law and unsupported by the evidence. There are two considerations upon which the decision of this court must depend, first, Is there substantial competent evidence upon which the judgment may be based, and second, Was the award of the appraisers fair, impartial and regularly made?

As to the first point, § 1–793 provides that the appraisers shall certify the compensation proper to be made to the owner for the land taken or affected as well as all damages accruing in consequence of the taking. The record discloses no comprehensive statement of the overall situation relating to the before and after value of the entire holdings of the defendant which criterion is universally accepted as being proper in eminent domain proceedings where as in the present instance it is claimed that damages accrued to remaining holdings by reason of the easement. Defendant's counsel argued that it was impossible to present evidence of this nature, but we are unconvinced on the point. There were undoubtedly numerous experts in grazing lands, land management, and grazing activities who could have been secured to present competent evidence bearing upon this point. Since there was nothing before the court of a comprehensive nature, it is necessary to review the testimony which related to various aspects of land values and damages.

One witness of plaintiff, a real estate broker whose qualifications were not questioned, testified that the land for grazing purposes was worth $3 per acre, while another said that a proper value was $3.50 to $3.75 per acre. All witnesses agreed that the land was of little or no value except for grazing. Only two of defendant's witnesses testified as to its value for that purpose. Broadbent, a rancher and stockholder in the defendant corporation, said that it would probably be worth $3 to $4 an acre. Thoman, also a rancher who operated on defendant's land, was somewhat evasive, but indicated that the top figure that he would be willing to give would be $10 per acre. Numerous witnesses agreed that it required approximately forty acres of this type of land upon which to pasture one sheep during the winter season. Thus, the only testimony that is before the court as to the value of the land itself was somewhere between $3 and $10 per acre, but plaintiff is bound by the value of $20 per acre as asserted in the pleadings. O'Brien v. Brown, 403 Ill. 183, 85 N.E.2d 685, certiorari denied 338 U.S. 827, 70 S.Ct. 76, 94 L.Ed. 503.

Defendant apparently relied largely upon the second element of compensation set out by the statute, that is, the damages accruing in consequence of the taking. It was stated, for instance, that when sheep come to a trail it is their nature to follow it and that if a sheep loses one or two hours of feeding by following a trail it will have to be helped by concentrated foods. It was also pointed out that this tendency could result in leaving a few ewes or a ram isolated from the flock which animals might be lost or killed by predators. However, there was no attempt to relate these alleged difficulties to the damages which were sought.

Some testimony was also elicited as to the likelihood of the growth of weeds on the disturbed soil in the right of way and that these might include halogeten, a plant poisonous to sheep. One witness, who claimed to have experience with noxious weeds and to have acted in controlling them for the Bureau of Land Management, had made examination of the premises and stated that he had picked up two or three stalks and destroyed two or three but that was all that he had found in the right of way during his examination. There was nothing, however, to show an increased prevalence of the plant because of the easement or of any actual damage to the sheep. Neither was there any showing of a proba-

bility of loss in that respect, the defendant appearing to be satisfied by presenting insinuations and possibilities.

Defendant's witness Igo said that a just compensation would be $3 to $4 per rod. On cross-examination he stated that this would be based upon damage to the entire operation and not on any price of the land. He further testified that the $3 to $4 a rod was based on his personal prior experience in the sale to a pipeline company. Thoman said that the land in question was difficult to evaluate but would carry a value of probably not less than $300 per acre "due to the fact that it's a nuisance and it's just a continuing thing." He also said that the value of the land would be reduced $150 per acre by the placing of the pipeline on it.

During the hearing, there was considerable testimony tending to show what had been paid for other land taken as rights of way. The subject first appeared in cross-examination of Fields, the land agent for plaintiff, when he was asked by defendant's counsel what the highest amount had been that plaintiff had paid for such right-of-way land, and was told a dollar a rod. Plaintiff's counsel on redirect examination elicited the fact that his company had paid the Rock Springs Grazing Association a dollar a rod. No objection was interposed by either side to this testimony. Later, Hooper, the treasurer of defendant company, testified the company had negotiated a sale to Pacific Northwest Pipeline for similar land for $2.25 per rod. Plaintiff objected to this testimony on the ground that there was no showing whether or not the land was sold at a forced sale. After some discussion, the court reserved ruling on the matter, whereupon plaintiff cross-examined this witness regarding the sale of easements, later introduced evidence of the amount paid by the Wyoming Highway Department for certain right-of-way land, and prior to the conclusion of the case presented evidence of the rental paid to the United States Government for right-of-way easements. The court at the conclusion of the hearing recognized the necessity of ruling as to the propriety of the evidence, but the record shows no ruling either at the time of, or prior to, the issuance of the judgment. It therefore becomes important to determine whether or not the evidence adduced regarding the purchase of like lands was competent. It is apparent from the record that all of the lands so discussed were taken by condemnation either actual or imminent. According to the weight of authority, such testimony is inadmissible whether or not the land is similar to that in controversy. 4 Nichols, Eminent Domain, p. 71 (3d ed.), cites and summarizes the reason for the majority rule by saying:

"* * * The rights of an owner to recover just compensation for the taking of his land are not to be measured by the generosity, necessity, estimated advantage, or fear or dislike of litigation which may have induced others to part with the title to their real estate, or to relinquish claims for damages by reason of injuries thereto. It would be equally unwise, unjust and impolitic to make it impossible for a corporation which has taken land by eminent domain to compromise the claims of one owner without furnishing evidence against itself in the cases of all others who had similar claims. * * *"

This view has not been unanimously adopted by the courts and some hold that evidence of the price paid by a condemnor of other land is admissible principally for the fact that in situations where there have been no land transactions this supplies a definite figure even if it has been accepted under some pressure. But other courts go further to point out that any sale is more or less forced because of a special need by either the seller or buyer. For a comprehensive discussion of the problem see Annotation, 118 A.L.R. 869, 893, supplemented in Annotation, 174 A.L.R. 386, 395, and the cases therein cited. This court has no hesitancy in adhering to the majority rule since we consider that prices brought about under the actual threat of lawsuits furnish no fair basis of market value.

Defendant insists that plaintiff waived its objection to the evidence which showed that another pipeline right of way through similar land had been purchased for $2.25 per rod by presenting evidence on this and like matters. The question is not to be resolved without some difficulty. The valuation of other condemned land was first mentioned by defendant's counsel in cross-examination, was developed to some extent by plaintiff on redirect, and was later presented by defendant with its own witnesses, at which time the court reserved ruling. Thereafter plaintiff asked a number of questions about the prices of other lands which had been taken for condemnation. In doing so, however, counsel for the plaintiff stated that they did not want to waive their objection by offering such testimony, and the court ruled that such testimony could be offered with that understanding. The problem would be more clear cut if the court had decided the matter immediately. 1 Wigmore on Evidence, § 19, p. 348 (3d ed.); 2 Bancroft's Code Practice and Remedies, § 1371(1927). Since the court failed to make a ruling either then or at the time of issuing judgment, we must assume that the plaintiff's objection was overruled. Clopton v. Clopton, 162 Cal. 27, 121 P. 720, 722; Citizens' Bank of Los Angeles v. Jones, 121 Cal. 30, 53 P. 354, 355. In such a situation the opposing litigant is not precluded from interrogating upon this and similar subjects. The matter is well discussed in Wallace v. American Life Ins. Co. of Des Moines, Iowa, 111 Or. 510, 225 P. 192, 199–200, 227 P. 465; Id., 116 Or. 195, 237 P. 974, where a number of authorities are quoted and discussed; and see Glennon v. Great Atlantic & Pacific Tea Company, 87 R.I. 454, 143 A.2d 282, 284–285, 155 A.2d 330, 157 A.2d 820.

In recapitulating the evidence, we find that the testimony as to the value of the land for grazing purposes was entirely disproportionate to the amount awarded. As to interference with defendant's operation there was various testimony alluding to poisonous weeds and sheep habits which if related to the amounts claimed or awarded might have constituted a basis for the judgment. However such testimony remained an embryo. This leaves as a foundation for the judgment only the testimony relating to the $2.25 per rod which had been accepted by this company for similar land. We have already stated our view in this respect. We consider that the evidence was inadmissible and that under the circumstances there was no waiver of the point by counsel. Thus, there was no substantial evidence upon which either the award or the judgment could be based.

The fairness and impartiality of the appraisers were not directly challenged, but the entire hearing addressed itself to the irregularity of their award. Unfortunately in a matter of this nature the details of what occurred before them are not available. But as was pointed out previously their "Certificate, Report and Appraisement" by showing two inconsistent bases of making the award disclosed that the proceedings were irregular and that the appraisers were either uninformed or confused as to that which should be controlling. It is unnecessary however to discuss this phase of the case since the lack of substantial evidence before the trial court requires that the judgment be reversed and the cause remanded for proceedings consistent with the views herein expressed.

Reversed and remanded.