STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Missouri,
Plaintiff-Respondent,

v.

Kate Ray KUHN et al., Defendants,

Kate Ray Kuhn, Defendant-Appellant.

No. 32458.

St. Louis Court of Appeals.

Missouri.

Feb. 21, 1967.

Motion for Rehearing or to Transfer to Supreme Court Denied March 17, 1967.

William B. Spaun, Hannibal, for appellant.

Robert L. Hyder, Joe Bill Carter, Howard C. Wright, Jr., Jefferson City, for respondent.

TOWNSEND Commissioner.

The condemnation petition herein was filed December 22, 1961, in connection with the relocation of Highway 61 in Marion County. Commissioners were appointed by the court and made their report on January 9, 1962. Being dissatisfied with the Commissioners' assessment of damages for the appropriation, defendant landowner filed her exceptions to their report on January 16, 1962. Jury trial was had on September 22 and 23, 1965, resulting in a verdict and judgment of $7100 in favor of defendant. She has appealed, following the overruling of her motion for a new trial.

■ Defendant, a lady seventy-six years of age at the time of trial, conducted her own case without the aid of counsel. Her motion for new trial complained generally of the inadequacy of the award and of three evidentiary matters whose significance in arriving at a determination of the damages was for the jury and which were plainly before the jury for its consideration. No errors in the conduct of the trial were charged. Under such circumstances the motion preserved nothing for review. Supreme Court Rules 79.03 and 83.13(a).

In view of this state of the record, defendant's counsel upon appeal to this court sought to invoke the "Plain Error" rule, Supreme Court Rule 79.04, and contended that "Plain errors affecting substantial rights may be considered although not raised in trial court, nor preserved for review in motion for new trial. Manifest injustice or miscarriage of justice would result if rule were not applied in this case."

Defendant was the owner of a farm of 180 acres, of which 23.58 acres were taken by the appropriation. The relocated, limited access highway runs diagonally across the 180 acres and leaves the defendant with a tract of about 59 acres north and one of 98 acres south of the new highway. The highway crosses a ravine where a fill of forty feet was necessary. A tunnel, 350 feet long, six feet wide and seven feet high, runs under the highway from defendant's north tract to her south tract and provides drainage. Before the new highway construction defendant had a free flowing spring, which is now situated within the northern portion of the right-of-way; in

the course of highway construction this spring was enclosed in a concrete box built to bedrock and from it a twenty-four inch concrete pipe lead to a concrete basin built on defendant's property so that the flow of water was moved from the right-of-way area and the direction of flow diverted to the northern tract, leaving the southern tract without water supply; the spring and the enclosure now rest at the bottom of a slope of the forty-foot fill. Defendant complained of two so-called "entrances" to her north and south tracts; there was conflicting testimony as to whether or not these actually gave access to the respective tracts or simply amounted to roadside parking places with precipitous drops of forty and thirty-eight feet respectively. Defendant's witnesses gave testimony as to the cost of fencing along both sides of the highway. Of the 23.58 acres taken, five acres were tillable ground; the balance is hilly and timbered.

Three appraisers, plaintiff's witnesses, testified that they were of opinion that defendant's damages from the taking totalled $7,000. The only other testimony as to damages was that of defendant who expressed the opinion that the value of the farm had been reduced from $54,000 to $40,000. The latter estimate was made after prompting by the court and after defendant had testified: "I said the value was less $7000 for the damage and $7000 for the price of the land."

The court gave the jury instructions in the form prescribed by M.A.I. 9.02 and 15.01.

Defendant's contention that the verdict was against the weight of the evidence cannot be sustained; that position is untenable in view of the testimony of the appraisers hereinafter reviewed.

On this appeal the principal points asserted by appellant-defendant were:

1. The court erred and abused its discretion in denying defendant's request that the jury have a view of the premises, a request to which plaintiff had readily acceded.

2. The court erred in not sustaining defendant's motion to strike the testimony of three appraisers who testified as to the damages suffered by the taking.

As to the first of such points, the judge stated his views in the following language:

"I have never been very favorable toward that simply because of the difficulty that you get into by interested parties making statements which are not in the evidence, can never be in the transcript, and my experience has been that it only leads to more trouble * * *. If the jury would insist, or even indicate that they would enjoy going there to see this, the Court would have no particular objections, but I don't think it is going to help you one earthly bit. You will get out there and somebody will make this statement, then somebody else will make that statement. There is no record, there is no court reporter there, there's no logic to it, there's no system of questioning, and I think we will be making a mistake in this case.

This highway and the property, I suspect every juror here knows where Mrs. Kate Kuhn lives, and certainly knows Highway 61, the old 61 that we traveled for many years, and we know the new divided highway between here and Palmyra not very far out of Hannibal, and I just can't see the advantage of having this jury go out there. If you just drove by, it would help nothing. You would have to get out of the cars, go up the hills and valleys and see it all, over to the south and over to the north, otherwise there would be no earthly use for you to go there, so the Court is going to refuse the request, even though both the attorney for the Highway Department and the property owner have agreed that the jury might go out there, and this Court is not—I am not strong against it, but I have the feeling that it would be far better for this jury to de-

termine this case according to the evidence as they have heard it from the witness stand, and seen it from the exhibits. Therefore the Court is not going to direct the jury to go out and view this area."

1. It was long ago held by the Supreme Court that "A view is not a matter of right but rests in the sound discretion of the trial judge as to whether it is proper or necessary to enable the jury to obtain a clearer understanding of the issues involved or to make a proper application of the evidence." City of St. Louis v. Worthington, 331 Mo. 182, 52 S.W.2d 1003, 1010. To this statement, the Supreme Court added: "It is only when there has been a flagrant abuse of this discretionary power that this court will interfere." Here the reasons which moved the court to deny the request have been amply set out above. We find such reasons to be sound ones. There was no abuse of discretion.

2. Three appraisers who inspected the property in January 1962 testified as to the elements of damage suffered by defendant. One appraiser was regularly employed by the Federal Land Bank of St. Louis as an appraiser of farm lands. The others were appraisers for savings and loan associations in Hannibal and each acted also as real estate broker. Each of the latter gentlemen had resided in Hannibal for more than forty years and each asserted his familiarity with real estate values in Marion County. In arriving at his finding of damage, each of the three appraisers took into consideration comparative sales, that is, actual sales of real estate of like kind and quality—as one expressed it, "Used what I thought the property was worth by using comparative sales of property that I knew had sold." Of the acreage taken, two of the appraisers put a value of $100 per acre on eighteen and one-half acres of brush and timbered land and a value of $200 per acre on five acres of cultivable land (the third appraiser was not questioned as to these specific values).

Mr. Sajban, the appraiser for the Federal Land Bank, summarized the technique of appraising by reciting the steps taken—going to the real estate in question, driving where one can drive, walking when necessary, observing the property thoroughly, measure and value buildings if any, determine the type and condition of fencing, observe topography, ascertain the amount of cultivable, pasture, woods and waste land, the water supply and the location of the land with relation to roads and towns; then by taking into consideration sales of comparative property, arrive at a valuation, which means "what it is worth on the market".

Besides determining the value of the 23.58 acres taken the appraisers made allowance for the cost of fencing on both sides of the highway ($1765), for bulldozing roads from the entrances provided at defendant's property lines ($100), for the cost of constructing a pond on defendant's south tract to take the place of the spring water diverted to the north tract, for the inconvenience that would be caused in crossing the highway with farm equipment, for inefficiency in operating some smaller and odd shaped fields whose size and shape resulted from the highway construction. Each appraiser found damage to defendant of $7000.

The only other testimony as to damage was that of defendant. She placed an overall value of $300 per acre on the farm before the appropriation. From that point forward her method of computing her damages is confusing and at points non-understandable, all illustrated by the following excerpts from her testimony:

"A. I am asking $300 an acre for 24.58 acres that the highway took. * *

Q. That comes to a sum of $7374.00, is that correct?

A. Yes, sir.

THE COURT: Now is that your total damage you are asking?

A. No, sir. I'm asking $300.00, the value in my opinion, of the price of the land. * * *

THE COURT: * * * but now for my benefit, you are talking—when you say $300.00, are you talking about 24.58 acres, or 198?

A. $300.00 damage for the 24.58 acres. That is not the value of the land. That is the damage that I am asking."

[Plaintiff's motion for a directed verdict for the defendant for $7374 was thereafter denied].

"Q. What, in your opinion, was the value of this property after the date that the right of way was acquired by the Highway Department? In other words, after January 9, 1962, what in your opinion was the value of this property?

A. The damage was $7000.00, take $7000 off of your $54,000.00.

Q. That would be $7000.00—the fair market value would be reduced by $7000.-00?

A. Yes. The land along old 61 is worth $1000.00 per acre."

[At this point plaintiff moved for a directed verdict of $7000 for defendant].

"THE COURT: Mrs. Kuhn, the measure of damages is the difference in the value of the farm before, and the value of the farm after the taking.

A. Yes, sir.

THE COURT: And you have just finished saying that the damage is $7000.-00.

A. Taken from the $54,000.00.

THE COURT: That's right. Now is that the amount you are asking this jury as your total damage, $7,000.00? Now, you are trying to divide something in—

and add something else. This question he asked you, and you don't have a lawyer, but the question he asked you was exactly proper, and he asked you what the value of your farm was before this taking, before this road, and you said $54,000.00. His next question was, what was the fair, reasonable market value of your farm immediately after the taking and after the road was built, and you said 'my damage is $7000.00, take 7 from 54.'

A. And $300.00 an acre for the value.

THE COURT: Well, you're adding something else. The Court should sustain his motion and this law suit would end right now. If you had a lawyer, it would end right now, because you have said that your damage is $7000.00. If that is what you mean, fine. But I've gathered from some other things that you have said that you are trying to—you add something else onto it.

A. I do.

THE COURT: But his question was the pure legal question which is the measure of damages. * * * if that is what you are saying that your difference is before—your value before was $54,000.00 and your value after was less $7000.00, that's all right, you may say that, but I want you to know what you are doing.

A. I said the value was less $7000.00 for the damage and $7000.00 for the price of the land.

THE COURT: Well, then, you shouldn't say less $7000.00 then, you should say less $14,000.00.

A. I shouldn't divide it, then?

THE COURT: No, Ma'am, because his question doesn't divide it, neither does the law divide it, so if you want to make a different answer, the Court is going to give you an opportunity to answer that question differently.

A. Well, I will double the sum and make it $14,000.00 damage.

THE COURT: All right.

MR. CARTER: Q. As I understand your testimony, then, Mrs. Kuhn, it is your opinion that the property would sell for $54,000.00 prior to the date of the road going through there?

A. Yes, sir.

Q. That a reasonably prudent purchaser, purchasing from a reasonably prudent seller, would pay only the price of $40,000.00 after this road was constructed?

A. I told you I couldn't count in my head. (Hesitates) That's right, $40,000.-00.

Q. This is what a reasonably prudent purchaser, we are talking about. We're not talking about what you, as an individual, may feel that you have been inconvenienced, or damaged, or the things that have been done to you, is this correct?

A. That I have been damaged, and the price has been reduced of the farm to $40,000.00.

Q. Is that correct? A. That is correct."

It is clear from this testimony that defendant, in asserting that her damages were $14,000, was basing such claim upon two elements: 1.—The value of the acreage actually taken and 2.—The damages to the balance of the farm. As to the first element, she was asserting a value of $300 per acre and rounded the claim off at an even $7000. She offered no evidence to substantiate the claim that the *land actually taken* was worth $300 per acre; in no way did she negate the opinions of qualified appraisers that such land had a value of only $2850. As to the second element: The defendant has specified those injuries to the remaining land and its uses which she believes have been suffered—the diversion of the spring waters and their contamination, the lack of ready access to certain small fields and their iso-

lation which at one point was comprehensively stated as "the inconvenience of not being able to get to the 59 acres which is worthless to me now." Having previously estimated her total damages at $14,000, defendant states that approximately one-fourth of total damage was to be attributed solely to such inconvenience. Defendant thereafter lumped the inconvenience, the loss of the spring, drilling a well ("you owe me a well, the Highway does") all together to account for one-half her damage. Defendant had computed her total damage at $600 per acre, related to the acreage taken, and then upon cross-examination allocated that damage in the way last indicated—approximately one-fourth to inconvenience, which by subtraction left one-fourth for loss of and replacement of spring water. And so we come around again to a valuation of $7000 for the land taken. There is nothing in the record from which it can be determined with any degree of plausibility that the inconvenience had a negative value of $3500 or that the diversion of the spring waters resulted in a loss of $3500. Defendant's estimates of such damages must be relegated to the field of speculation.

█ Defendant's motion to strike the testimony of the appraisers was based principally upon a charged inadequacy of inspection of the premises. She recited that the inspection occurred in sub-zero temperatures, when there was snow on the ground, with a 20-mile wind, and that she was not invited to accompany the appraisers although they were brought to the premises by representatives of the Highway Commission. The testimony of appraisers Sajban and Schneider shows that they travelled the area by car as far as the way was passable and on foot explored the acreage to be taken, climbing up the steep slopes and down in the valley; and observed the topography and the relation of the land appropriated to the balance of defendant's farm. We cannot find either impropriety or inadequacy in the inspection made as the basis for the subsequent appraisal. Defendant's motion to strike was properly overruled.

Under Supreme Court Rules 79.03 and 83.13(a), defendant's motion for new trial preserved nothing for review. However in view of defendant's insistence in this Court upon the application of Rule 79.-04, we have examined the record more extensively perhaps than has been necessary to determine whether the errors alleged in defendant's brief actually existed and were "plain errors affecting substantial rights". We cannot discern any such plain errors as are contemplated by the rule and do not find that injustice or miscarriage of justice has resulted.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court. Accordingly, judgment is affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.